**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Central District of California

Case number (*if known*): _____ Chapter 15

☐ Check if this is an
amended filing

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

| | | |
|---|---|---|
| 1. | **Debtor's name** | 9139249 Canada Inc. |

| | |
|---|---|
| 2. | **Debtor's unique identifier** |

**For non-individual debtors:**

☐ Federal Employer Identification Number (EIN)  ___ ___ – ___ ___ ___ ___ ___ ___ ___

☑ Other  98-1325773  . Describe identifier  Tax Identification Number (TIN)

**For individual debtors:**

☐ Social Security number:  xxx – xx– ___ ___ ___ ___

☐ Individual Taxpayer Identification number (ITIN): **9** xx – xx – ___ ___ ___ ___

☐ Other _____ . Describe identifier _____

| | | |
|---|---|---|
| 3. | **Name of foreign representative(s)** | 9139249 Canada Inc. |

| | | |
|---|---|---|
| 4. | **Foreign proceeding in which appointment of the foreign representative(s) occurred** | Superior Court (Commercial Division) for the Province of Québec, District of Montréal, No.: 500-11-064503-242 |

| | |
|---|---|
| 5. | **Nature of the foreign proceeding** |

*Check one:*

☐ Foreign main proceeding
☐ Foreign nonmain proceeding
☑ Foreign main proceeding, or in the alternative foreign nonmain proceeding

| | |
|---|---|
| 6. | **Evidence of the foreign proceeding** |

☐ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☑ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached. Due to the time of the hearing, the Debtors provide a copy of the Initial Order as entered and will file a certified copy upon receipt

| | |
|---|---|
| 7. | **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?** |

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☑ Yes

| Debtor | 9139249 Canada Inc. | Case number *(if known)* |
|---|---|---|
| | Name | |

---

**8. Others entitled to notice**

Attach a list containing the names and addresses of:

(i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9. Addresses**

**Country where the debtor has the center of its main interests:**

Canada

**Debtor's registered office:**

610-4200 BOUL. Saint-Laurent
Number        Street

_____
P.O. Box

Montréal, Québec        H2W2R2
City        State/Province/Region        ZIP/Postal Code

Canada
Country

**Individual debtor's habitual residence:**

_____
Number        Street

_____
P.O. Box

_____
City        State/Province/Region        ZIP/Postal Code

_____
Country

**Address of foreign representative(s):**

610-4200 BOUL. Saint-Laurent
Number        Street

_____
P.O. Box

Montréal, Québec        H2W2R2
City        State/Province/Region        ZIP/Postal Code

Canada
Country

---

**10. Debtor's website** (URL)

Bus.com

---

**11. Type of debtor**

*Check one:*

☑ Non-individual (*check one*):

   ☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

   ☐ Partnership

   ☐ Other.  Specify: _____

☐ Individual

---

| Debtor | 9139249 Canada Inc. | Case number *(if known)* |
|---|---|---|
| | Name | |

---

**12. Why is venue proper in *this district*?**

Check one:

☐ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

Ownership of assets in this district; incorporation of affiliate_____.

---

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ _____     Wolf Kohlberg _____
    Signature of foreign representative           Printed name

Executed on   11/22/2024 _____
           MM  / DD / YYYY

✗ _____     _____
    Signature of foreign representative           Printed name

Executed on   _____
           MM  / DD / YYYY

---

**14. Signature of attorney**

✗ /s/Zachary T. Page _____     Date   11/25/2024 _____
    Signature of Attorney for foreign representative           MM   / DD / YYYY

Zachary T. Page _____
Printed name
Thompson Hine LLP _____
Firm name

_____
Number        Street
3130 Wilshire Boulevard _____     California  90403 _____
City                                                        State        ZIP Code

(310) 998-9100 _____     Zach.Page@ThompsonHine.com _____
Contact phone                                        Email address

293885 _____     CA _____
Bar number                                             State

---

## SUPERIOR COURT
(Commercial division)

CANADA
PROVINCE OF QUEBEC
DISTRICT OF MONTREAL

DATE: November 21, 2024

---

**PRESIDING: THE HONOURABLE JUSTICE CÉLINE LEGENDRE, S.C.J.**

---

No.:  500-11-064503-242

**IN THE MATTER OF THE PLAN OF COMPROMISE OR ARRANGEMENT OF**

**9139249 CANADA INC.**
**BUS.COM US HOLDING INC.**
**BUS.COM LEASING LLC**
**BUS.COM US LLC**
**9139249 CANADA INC. (California)**

    Debtors

-and-

**EXPORT DEVELOPMENT CANADA**

    Secured Creditor/Interim Lender

-and-

**PRICEWATERHOUSECOOPERS INC.**

    Monitor

---

### INITIAL AND TRANSITION ORDER

---

[1]    **CONSIDERING** Export Development Canada's ("**EDC**") *Application for (i) a Transition Order under the Companies' Creditors Arrangement Act to Continue Restructuring Proceedings Commenced Under the Bankruptcy and Insolvency Act, and (ii) for an Initial Order and an Amended and Restated Initial Order Under*

*the CCAA* (the "**Application**") in respect of 9139249 Canada Inc. ("**913 Canada**"), Bus.com US Holdings Inc., Bus.com Leasing LLC, Bus.com US LLC and 9139249 Canada Inc. (together with 913 Canada, the "**Debtors**") the sworn declaration and the exhibits in support thereof;

[2]   **CONSIDERING** the Monitor's report dated November 19, 2024;

[3]   **CONSIDERING** the consent and collaboration of the Debtors;

[4]   **CONSIDERING** the Notice of Intention to Make a Proposal filed by 913 Canada (the "**NOI**") on August 9, 2024, under Section 50.4(1) of the *Bankruptcy and Insolvency Act*, R.S.C., 1985, c. B-3 (the "**BIA**");

[5]   **CONSIDERING** the order issued by Mtre Patrick Gosselin, Registrar, on August 19, 2024 (the "**First NOI Order**") which, *inter alia*:

   a)   extended the delay for 913 Canada to file a proposal with the Official Receiver;

   b)   approved an interim financing facility in the maximum principal amount of $850,000 (the "**Initial Interim Facility**") on terms and conditions set forth in the Interim Financing Term Sheet (the "**Initial Interim Financing Term Sheet**");

   c)   approved a charge over all of 913 Canada's property, with the exception of the Guaranteed Investment Certificates held by the Royal Bank of Canada in 913 Canada's name in the account which, as at August 14, 2024 bore number 007201250900, in the aggregate initial amounts of USD $78,000 and CAD $190,000 (the "**RBC Carveout**"), in the amount of $1,020,000 (the "**NOI DIP Charge**") in favour of EDC as interim lender;

   d)   approved an administration charge to guarantee payment of the professional fees and disbursements of 913 Canada, PricewaterhouseCoopers Inc. (the NOI Trustee), EDC and EDC's financial advisor (the "**NOI Admin Charge**"); and

   e)   approved a charge for the benefit of 913 Canada's directors and officers (the "**NOI D&O Charge**").

[6]   **CONSIDERING** the Order Approving a Sale and Investment Solicitation Process (the "**SISP Order**"), also issued by Mtre Patrick Gosselin, Registrar, on August 19, 2024, and the procedure for the conduct of a Sale and Investment Solicitation Process for the assets and/or the business of the Debtors (the "**SISP**");

[7]   **CONSIDERING** the order issued by Mtre Vincent M. Aubé, Registrar, on October 11, 2024 (the "**Second NOI Order**") which, *inter alia*:

a) Extended the delay for 913 Canada to file a proposal with the Official Receiver to November 25, 2024;

b) Approved a second interim financing facility in the maximum principal amount of $700,000 (the "**Supplemental Interim Facility**") on terms and conditions set forth in the Supplemental Interim Financing Term Sheet (as amended on November 14, 2024, the "**Supplemental Interim Financing Term Sheet**"); and

c) Approved an increase of the NOI DIP Charge to an amount of $1,860,000;

[8]    **CONSIDERING** the representations of counsel for EDC and for the Debtors;

[9]    **CONSIDERING** the provisions of the Companies' Creditors Arrangement Act, R.S.C., 1985, c. C-36 (the "**CCAA**");

**THE COURT HEREBY:**

[10]    **GRANTS** the Application.

[11]    **ISSUES** an order pursuant to the CCAA (the "**Order**"), divided under the following headings:

| | |
|---|---|
| I. | Service |
| II. | Application of the CCAA and Administrative Consolidation |
| III. | Effective Time |
| IV. | Plan of Arrangement |
| V. | Stay of Proceedings against the Debtors and the Property |
| VI. | Stay of Proceedings against the Directors and Officers |
| VII. | Possession of Property and Operations |
| VIII. | No Exercise of Rights or Remedies; |
| IX. | No Interference with Rights |
| X. | Continuation of Services |
| XI. | Non-Derogation of Rights |
| XII. | Interim Financing and Interim Financing Charge |
| XIII. | Administration Charge |
| XIV. | Directors' and Officers' and Charge |
| XV. | Restructuring |
| XVI. | Powers of the Monitor |
| XVII. | Priorities and General Provisions Relating to CCAA Charges |
| XVIII. | Comeback hearing |
| XIX. | General |

### I.   SERVICE

[12]   **ORDERS** that any prior delay for the presentation of the Application is hereby abridged and validated so that the Application is properly returnable this day and hereby dispenses with further service thereof.

[13]   **DECLARES** that sufficient prior notice of the presentation of this Application has been given to interested parties, including the secured creditors who are likely to be affected by the charges created herein.

### II.   APPLICATION OF THE CCAA AND ADMINISTRATIVE CONSOLIDATION

[14]   **DECLARES** that the Debtors are debtor companies to which the CCAA applies.

[15]   **ORDERS** the consolidation of these CCAA proceedings of the Debtors (the "**CCAA Proceedings**") under one single Court file and that all existing and future proceedings, filings, and other matters in relation to the CCAA Proceedings be filed jointly and together in Court file number 500-11-064503-242.

[16]   **DECLARES** that the consolidation of the CCAA Proceedings in respect of the Debtors shall be for administrative purposes only and shall not affect a consolidation of the assets and property or of the debts and obligations of each of the Debtors including, without limitation, for the purposes of any Plan or Plans that may be hereafter proposed.

### III.   EFFECTIVE TIME

[17]   **DECLARES** that this Order and all of its provisions are effective as of 12:01 a.m. Montréal time, province of Québec, on the date of this Order (the "**Effective Time**").

### IV.   PLAN OF ARRANGEMENT

[18]   **DECLARES** that the Debtors shall have the authority to file with this Court and to submit to its creditors one or more plans of compromise or arrangement (collectively the "**Plan**") in accordance with the CCAA.

### V.   STAY OF PROCEEDINGS AGAINST THE DEBTORS

[19]   **ORDERS** that, until and including **November 29, 2024** or such later date as the Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**"), including but not limited to seizures, executions, notices of execution, judicial or extrajudicial right of resolution or resiliation, right of set-off or compensation between mutual claims arising prior to the Effective Time or mutual claims arising respectively prior to and after the Effective Time, writs of seizure or execution, any and all actions, applications, arbitration proceedings and other lawsuits existing at the time of this Order in which any of the Debtors is a defendant, party or respondent (either individually or with

other Persons (as defined below)) shall be commenced or continued against or in respect of any of the Debtors, or affecting any of the Debtors' business operations and activities (the "**Business**") or any of the Property (as defined herein below), including as provided in paragraph [23] herein except with leave of this Court. All Proceedings currently underway against or in respect of the Debtors or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to Section 11.1 of the CCAA.

[20]   **ORDERS** that the rights of His Majesty in right of Canada and His Majesty in right of a Province are suspended in accordance with the terms and conditions of Section 11.09 of the CCAA.

[21]   **ORDERS** that the claims of EDC pursuant to the credit agreement entered into between EDC, as lender, and the Debtors, as borrowers and guarantors, dated March 30, 2023, shall not be compromised or arranged pursuant to the Plan or these proceedings, and EDC shall be treated as unaffected creditor in any Plan.

## VI.   STAY OF PROCEEDINGS AGAINST THE DIRECTORS AND OFFICERS

[22]   **ORDERS** that during the Stay Period and except as permitted under Subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Debtors nor against any person deemed to be a director or an officer of any of the Debtors under Subsection 11.03(3) of the CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Debtors where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation.

## VII.   POSSESSION OF PROPERTY AND OPERATIONS

[23]   **ORDERS** that the Debtors shall remain in possession and control of their present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof and all bank accounts (collectively the "**Property**"), notwithstanding any enforcement process, including but not limited to seizures, executions, writs of seizure or execution, the whole in accordance with the terms and conditions of this Order.

[24]   **ORDERS** that, subject to the terms and conditions set out in the Interim Financing Documents (as defined below), each of the Debtors is authorized, in the ordinary course of business, to complete outstanding transactions and to engage in new transactions with one another, and to continue, on and after the date of this Order, to buy and sell goods and services from and to one another, and to collect and pay the associated costs, expenses and other amounts from and to one another (collectively, the "**Ordinary Course Intercompany Transactions**"). All Ordinary Course Intercompany Transactions shall continue on terms consistent with existing arrangements or past practice, unless otherwise required or agreed upon

by the Monitor and the Interim Lender  (as defined below) in consultation with EDC, or as otherwise ordered by this Court.

[25]  **ORDERS** that the Debtors shall be entitled but not required to pay the following expenses, whether incurred prior to or after this Order, with the prior written consent of the Monitor and in accordance with the Interim Financing Documents and the cash flow forecasts appended thereto:

  a) all outstanding and future wages, salaries, expenses, benefits and vacation pay payable before, on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements; and

  b) the fees and disbursements of any advisor or counsel retained or employed by the Debtors in connection with these proceedings, at their standard rates and charges.

## VIII.  NO EXERCISE OF RIGHTS OR REMEDIES

[26]  **ORDERS** that, during the Stay Period, and subject to, inter alia, Subsection 11.1 of the CCAA, all rights and remedies, of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of any of the Debtors, or affecting the Business, the Property or any part thereof, including, any contractual right of any third party to modify any of the Debtors' existing rights as a result of any event of default or of non-performance by the Debtors under any agreement (including any bond, surety, indemnity or other comparable agreement), including by reason of the insolvency of the Debtors, the commencement CCAA Proceedings and/or any admissions or evidence filed by the Debtors in the CCAA Proceedings, are hereby stayed and suspended except with leave of this Court.

[27]  **DECLARES** that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to the Debtors or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period. Without limitation to the foregoing, in the event that the Debtors, or any of them, become(s) bankrupt or a receiver as defined in Subsection 243(2) of the BIA is appointed in respect of the Debtors, the period between the date of this Order and the day on which the Stay Period ends shall not be calculated in respect of the Debtors in determining the 30 day periods referred to in Sections 81.1 and 81.2 of the BIA.

500-11-064503-242

7

## IX.   NO INTERFERENCE WITH RIGHTS

[28]   **ORDERS** that during the Stay Period, no Person shall discontinue, fail to renew per the same terms and conditions, fail to honour, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, except with the written consent of the Debtors, as applicable, and the Monitor, or with leave of this Court.

## X.   CONTINUATION OF SERVICES

[29]   **ORDERS** that during the Stay Period and subject to paragraph [30] hereof and Subsection 11.01 of the CCAA, all Persons having verbal or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, utility or other goods or services made available to the Debtors, are hereby restrained until further order of this Court from discontinuing, failing to renew per the same terms and conditions, altering, interfering with, terminating the supply or, where the case may be, interrupting, delaying or stopping the transit of such goods or services as may be required by the Debtors, and that the Debtors shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Debtors, without having to provide any security deposit or any other security, in accordance with normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier or service provider and the Debtors, as applicable, with the consent of the Monitor, or as may be ordered by this Court.

[30]   **ORDERS** that, subject to Subsection 11.01 of the CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to the Debtors on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to make further advance of money or otherwise extend any credit to the Debtors.

[31]   **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by any of the Debtors with any Person during the Stay Period, whether in an operating account or otherwise for itself or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by the Debtors and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited

into any of the Debtors' accounts until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

## XI.   NON-DEROGATION OF RIGHTS

[32]   **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of any of the Debtors shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of this Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

## XII.   INTERIM FINANCING AND INTERIM FINANCING CHARGE

[33]   **CONTINUES** (i) the First NOI Order in respect of the Initial Interim Facility, the Interim Lender and the NOI DIP Charge, and (ii) the Second NOI Order in respect of the Supplemental Interim Facility and the increase of the NOI DIP Charge with respect to 913 Canada.

[34]   **ORDERS** that the Debtors are, with EDC's approval and the Monitor's support, authorized to borrow, repay and reborrow from EDC, in its capacity as interim lender (the "**Interim Lender**"), such amounts from time to time as the Debtors, with EDC's approval and the Monitor's support, may consider necessary or desirable, (i) up to a maximum principal amount of $850,000 outstanding at any time on the terms and conditions as set forth in the Initial Interim Financing Term Sheet and the Interim Financing Documents (as defined hereinafter) and (ii) up to a maximum principal amount of $700,000 outstanding at any time, on the terms and conditions as set forth in the Supplemental Interim Financing Term Sheet  and in the Supplemental Interim Financing Documents (as defined hereinafter), to finance working capital requirements of the Debtors and to implement the restructuring in the current proceedings and to pay such other amounts as are permitted by the terms of the Order and the Interim Financing Documents (as defined hereinafter) (collectively hereinafter the "**Interim Facility"**).

[35]   **ORDERS** that the Debtors are hereby authorized to execute and deliver such credit agreements, security documents and other definitive documents (collectively the "**Interim Financing Documents**") as may be required by the Interim Lender in connection with the Interim Facility, the Initial Interim Financing Term Sheet and the Supplemental Interim Financing Term Sheet, and the Debtors are hereby authorized to perform all of its obligations under the Interim Financing Documents.

[36]   **ORDERS** that the Debtors shall pay to the Interim Lender, when due, all amounts owing (including principal, interest, fees and expenses, including without limitation, all reasonable fees and disbursements of counsel and all other reasonably required advisers to or agents of the Interim Lender, on a full indemnity basis (the

500-11-064503-242

9

"**Interim Lender Expenses**")) under the Interim Financing Documents and shall perform all of their other obligations to the Interim Lender pursuant to the Supplemental Interim Financing Term Sheet, the Interim Financing Documents and the Order.

[37]  **DECLARES** that all now owned or hereafter acquired personal (movable) and real (immovable) assets and property of the Debtors, tangible (corporeal) or intangible (incorporeal), with the exception of the Guaranteed Investment Certificates held by the Royal Bank of Canada in the name of the 913 Canada in the account which, as at August 14, 2024 bears number 00720125900, in the aggregate initial amounts of USD $78,000 and CAD $190,000, (collectively, the "**Property**") is hereby subject to a charge, hypothec and security for an aggregate amount of $1,860,000 (such charge, hypothec and security is referred to herein as the "**DIP Charge**") in favour of the Interim Lender as security for all obligations of the Debtors to the Interim Lender with respect to all amounts owing (including principal, interest and the Interim Lender Expenses) under or in connection with the Supplemental Interim Financing Term Sheet and the Interim Financing Documents. The DIP Charge shall have the priority established by paragraphs [59]and [60] of this Order.

[38]  **ORDERS** that the claims of the Interim Lender pursuant to the Interim Financing Documents shall not be compromised or arranged pursuant to a plan of arrangement of the Debtors pursuant to any proposal (a "**Proposal**") filed pursuant to the BIA or any Plan, and the Interim Lender, in that capacity, shall be treated as an unaffected creditor in these proceedings and in any Proposal.

[39]  **ORDERS** and **DECLARES** that nothing in this Order shall prevent the Interim Lender from enforcing its security or its contractual rights as against the applicable Debtors, subject only to the Interim Lender providing at least two (2) business days advance written notice of their intention to do so to the Debtors and to the Monitor (the "**Interim Lender Notice Period**"). Upon expiry of the Interim Lender Notice Period, the Interim Lender  shall be entitled to take any and all steps under the loan documents, and/or the Interim Financing Documents, and otherwise permitted at law.

[40]  **ORDERS** that the Interim Lender may:

   a.  notwithstanding any other provision of the Order, take such steps from time to time as it may deem necessary or appropriate to register, record or perfect the DIP Charge and the Interim Financing Documents in all jurisdictions where it deems it is appropriate; and

   b.  notwithstanding the terms of the paragraph to follow, refuse to make any advance to the Debtors if the Debtors fail to meet the provisions of the Interim Financing Documents.

[41]  **ORDERS** that the Interim Lender shall not take any enforcement steps under the Interim Financing Documents or the DIP Charge except as contemplated by the Supplemental Interim Financing Term Sheet. The Interim Lender shall be entitled to take any and all steps under the Interim Financing Documents and the DIP Charge and otherwise permitted at law, but without having to send any demands under Section 244 of the BIA.

[42]  **ORDERS** that the Debtors shall be entitled to continue to utilize the various bank accounts currently in place with, among others, the Royal Bank of Canada and City National Bank.

## XIII.  ADMINISTRATION CHARGE

[43]  **ORDERS** that the Debtors shall pay the reasonable fees and disbursements of the Monitor, its legal counsel, the Debtors' legal counsel (Borden Ladner Gervais LLP), and the Interim Lender's legal counsel (Fasken Martineau Dumoulin LLP) and its financial advisor (E&Y Parthenon) that are directly related to these proceedings and the restructuring contemplated therein, whether incurred before or after the Order, and shall provide each with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

[44]  **DECLARES** that the Monitor, its legal counsel, the Debtors' legal counsel (Borden Ladner Gervais LLP) and the Interim Lender's legal counsel (Fasken Martineau Dumoulin LLP) and its financial advisor (E&Y Parthenon), as security for the professional fees and disbursements incurred both before and after the making of the Order and directly related to these proceedings and the restructuring contemplated therein, be entitled to the benefit of and are hereby granted a charge and security in the Property of the Debtors to the extent of the aggregate amount of $200,000 (the "**Administration Charge**"), having the priority established by paragraphs [59] and [60] of this Order.

## XIV.  DIRECTORS AND OFFICERS CHARGE

[45]  **ORDERS** that the Debtors shall indemnify their directors and officers from all claims relating to any obligations or liabilities they may incur and which have accrued by reason of or in relation to their respective capacities as directors or officers of the Debtors from and after the date of filing of the NOI, namely August 9, 2024, except where such obligations or liabilities were incurred as a result of such directors' or officers' gross negligence, willful misconduct or gross or intentional fault as further detailed in 11.51 of the CCAA.

[46]  **ORDERS** that the directors and officers of the Debtors shall be entitled to the benefit of and are hereby granted a charge and security in the Property, to the extent of the aggregate amount of $150,000 (the "**D&O Charge**"), as security for the indemnity provided in paragraph [39] of this Order as it relates to obligations and liabilities that the directors and officers may incur in such capacity after the

making of this Order. The NOI D&O Charge shall have the priority set out in paragraphs [59] and [60] of this Order.

[47]  **ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the D&O Charge, and (b) the directors and officers shall only be entitled to the benefit of the D&O Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the directors and officers are entitled to be indemnified in accordance with paragraph [46] of this Order.

## XV.  RESTRUCTURING

[48]  **DECLARES** that, to facilitate the orderly restructuring of their business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, the Debtors shall have the right, subject to approval of the Monitor and in consultation with the Interim Lender or further order of the Court, to:

    a. permanently or temporarily cease, downsize or shut down any of their operations or locations as they deem appropriate and make provision for the consequences thereof in the Plan;

    b. pursue all avenues to finance or refinance, market, convey, transfer assign or in any other manner, dispose of the Business or Property, in whole or part, subject to further order of the Court and sections 11.3 and 36 of the CCAA, and under reserve of subparagraph [48]c;

    c. convey, transfer, assign, lease, or in any other manner, dispose of the Property, outside of the ordinary course of business, in whole or in part, provided that the price in each case does not exceed $50,000 individually or $200,000 in the aggregate and that the prior written approval of the Interim Lender was obtained;

    d. terminate the employment of such of their employees or temporarily or permanently lay off such of their employees as the Debtors deem appropriate and, to the extent any amounts in lieu of notice, termination or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Debtors, as applicable, and such employee, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the Debtors may determine;

    e. subject to the provisions of Section 32 of the CCAA, disclaim or resiliate, any of the Debtors' agreements, contracts or arrangements of any nature whatsoever, with such disclaimers or resiliation to be on such terms as may be agreed between the Debtors and the relevant party, or failing such

500-11-064503-242

12

agreement, to make provision for the consequences thereof in the Plan; and

    f.  subject to Section 11.3 of the CCAA, assign any rights and obligations of the Debtors.

[49]  **DECLARES** that, in order to facilitate the Restructuring, the Debtors may also, subject to the approval of the Monitor and in consultation with the Interim Lender, or further order of the Court, settle claims of creditors, customers and suppliers that are in dispute;

[50]  **DECLARES** that, if a notice of disclaimer or resiliation is given to a landlord of any of the Debtors pursuant to Section 32 of the CCAA and Subsection [48]e of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving the Debtors and the Monitor 24 hours' prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as any such landlord may determine without waiver of, or prejudice to, any claims or rights of the landlord against the Debtors, provided nothing herein shall relieve such landlord of their obligation to mitigate any damages claimed in connection therewith.

[51]  **ORDERS** that the Debtors shall provide to any relevant landlord notice of any of Debtors' intention to remove any fittings, fixtures, installations or leasehold improvements at least seven (7) days in advance. If the Debtors have already vacated the leased premises, it shall not be considered to be in occupation of such location pending the resolution of any dispute between the Debtors and the landlord.

[52]  **DECLARES** that, pursuant to sub-paragraph 7(3)(c) of the Personal Information Protection and Electronic Documents Act, SC 2000, c 5, the Debtors and the Monitor are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors, financiers, buyers or strategic partners and to their advisers (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Debtors binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Debtors or destroyed. If a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the

personal information in a manner which is in all respects identical to the prior use thereof by the Debtors.

## XVI.   POWERS OF THE MONITOR

[53]   **ORDERS** that PricewaterhouseCoopers Inc. is hereby appointed to monitor the business and financial affairs of the Debtors as an officer of this Court (the "**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations, referred to in Section 23 of the CCAA:

a.  shall, as soon as practicable, (i) publish once a week for two consecutive weeks or as otherwise directed by the Court, in La Presse + and (ii) within five (5) business days after the date of this Order, (A) post on the Monitor's website (the "**Website**"), a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the Debtors of more than $1,000, advising them that the Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

b.  shall assist the Debtors in dealing with their creditors and other interested Persons during the Stay Period;

c.  shall assist the Debtors with the preparation of their cash flow projections and any other projections or reports and the development, negotiation and implementation of a Plan;

d.  shall advise and assist the Debtors to review the Debtors' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

e.  shall assist the Debtors with the Restructuring and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

f.  shall continue to implement the SISP in accordance with the SISP Order;

g.  shall report to the Court on the state of the business and financial affairs of the Debtors or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order and may file consolidated reports for the Debtors;

h.  shall report to the Interim Lender, on demand and as required by the Interim

500-11-064503-242                                                                                                           14

Lender , on the state of the operations, business and financial affairs of the
Debtors or developments in these proceedings or any related proceedings,
including with respect to the SISP and any solicitation efforts to be made in
connection with the Debtors' Property;

i.   shall report to this Court and interested parties, including but not limited to
creditors affected by any Plan, with respect to the Monitor's assessment of,
and recommendations with respect to, such Plan;

j.   may retain and employ such agents, advisers and other assistants as are
reasonably necessary for the purpose of carrying out the terms of this
Order, including, without limitation, one or more entities related to or
affiliated with the Monitor;

k.   may engage legal counsel to the extent the Monitor considers necessary in
connection with the exercise of its powers or the discharge of its obligations
in these proceedings and any related proceeding, under this Order or under
the CCAA;

l.   may act as a "foreign representative" of any of the Debtors or in any other
similar capacity in any insolvency, bankruptcy or reorganisation
proceedings outside of Canada;

m.   may give any consent or approval as may be contemplated by the Order or
the CCAA;

n.   may hold and administer funds in trust in connection with arrangements
made among the Debtors, any counterparties and the Monitor, or by Order
of this Court; and

o.   may perform such other duties as are required by this Order or the CCAA
or by this Court from time to time.

[54]   **ORDERS** that, unless expressly authorized to do so by this Court, the Monitor shall
not otherwise interfere with the business and financial affairs carried on by the
Debtors, and the Monitor is not empowered to take possession of the Property nor
to manage any of the business and financial affairs of the Debtors nor shall the
Monitor be deemed to have done so.

[55]   **ORDERS** that, without limiting the generality of anything herein, the Debtors and
their Directors, officers, employees and agents, accountants, auditors and all other
Persons having notice of this Order shall forthwith provide the Monitor
with unrestricted access to all of the Business and Property, including, without
limitation, the premises, books, records, data, including data in electronic form, and
all other documents of the Debtors in connection with the Monitor's duties and
responsibilities hereunder, the Restructuring, the Property and the Business.

[56]   **DECLARES** that the Monitor may provide creditors and other relevant stakeholders of the Debtors with information in response to requests made by them in writing addressed to the Monitor and copied to the counsel for the Debtors. In the case of information that the Debtors have advised the Monitor as being confidential, proprietary or competitive, the Monitor shall not provide such information to any Person without the consent of the Debtors unless otherwise directed by this Court.

[57]   **DECLARES** that if the Monitor, in its capacity as Monitor, carries on the business of the Debtors or continues the employment of the Debtors' employees, the Monitor shall benefit from the provisions of Section 11.8 of the CCAA.

[58]   **DECLARES** that Section 215 of the BIA applies mutatis mutandis, and no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out of the provisions of any order of this Court, except with prior leave of this Court, on at least seven (7) days' notice to the Monitor and its counsel. The entities related to or affiliated with the Monitor shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

## XVII.   PRIORITIES AND GENERAL PROVISIONS RELATING TO THE CCAA CHARGES

[59]   **DECLARES** that the priorities of the Administration Charge, the D&O Charge and the DIP Charge (collectively, the "**CCAA Charges**"), as between such CCAA Charges with respect to any Property to which they apply, shall be as follows:

   a.  first, the Administration Charge;

   b.  second, the Interim Lender Charge;

   c.  third, the D&O Charge;

[60]   **DECLARES** that each of the CCAA Charges shall rank in priority to any and all claims, rights, hypothecs, mortgages, liens, security interests, priorities, charges, deemed trusts, encumbrances or security of whatever nature or kind, whether or not they have been registered, published or filed (collectively, "**Encumbrances**") affecting the Property charged by such Encumbrances.

[61]   **ORDERS** that, except as otherwise expressly provided for herein, the Debtors shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges unless the Debtors, as applicable, obtain the prior written consent of the Monitor and of the Interim Lender, and the prior approval of the Court.

[62]   **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Debtors, notwithstanding any requirement

for the consent of any party to any such charge or to comply with any condition precedent.

[63]   **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of the CCAA Charges, as applicable, shall be valid and enforceable and not otherwise be limited or impaired in any way by: (i) these proceedings and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such application(s) or any assignment(s) in bankruptcy made or deemed to be made in respect of any of the Debtors; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds the Debtors (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

   a.   the creation of any of the CCAA Charges shall not create nor be deemed to constitute a breach by the Debtors of any Third-Party Agreement to which any of the Debtors is a party; and

   b.   the beneficiaries of the CCAA Charges shall not have any liability to any Person whatsoever as a result of any breach of any Third-Party Agreement caused by or resulting from the creation of the CCAA Charges.

[64]   **DECLARES** that notwithstanding: (i) these proceedings and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such application(s) or any assignment(s) in bankruptcy made or deemed to be made in respect of any of the Debtors; and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by any of the Debtors pursuant to this Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

[65]   **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the Debtors charged by the CCAA Charges and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver any of the Debtors.

## XVIII.   COMEBACK HEARING

[66]   **ORDERS** that, a full comeback hearing on the relief sought in the Application shall take place on November 29, 2024, at 9:30 in room 16.01 of the Montréal Courthouse and to be communicated to the service list.

## XIX.   GENERAL

[67]   **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel or financial advisors of the Debtors or of the Monitor in relation to the Business or Property of the Debtors, without first obtaining leave of this Court, upon ten (10) days' written notice to the Debtors counsel, the Monitor's counsel, and to all those referred to in this paragraph whom it is proposed be named in such Proceedings.

[68]   **DECLARES** that this Order and any proceeding or sworn statement leading to this Order, shall not, in and of themselves, constitute a default or failure to comply by the Debtors under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

[69]   **DECLARES** that, except as otherwise specified herein, the Debtors, the Monitor and EDC are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Debtors and that any such service shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three (3) business days after mailing if by ordinary mail.

[70]   **DECLARES** that the Debtors and any party to the proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing an electronic copy of such materials to counsels' email addresses as provided for on the service list.

[71]   **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on counsel for the Debtors and counsel for the Monitor and has filed such notice with this Court, or appears on the service list prepared by counsel for the Monitor, save and except when an order is sought against a Person not previously involved in these proceedings.

[72]   **DECLARES** that the Debtors or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of this Order on notice only to each other.

[73]   **DECLARES** that this Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada.

[74]   **AUTHORIZES** the Debtors or the Monitor to apply as they may consider necessary or desirable, in consultation with the Interim Lender, with or without notice, to any other court or administrative body, whether in Canada, the United States of America, or elsewhere, for orders which aid and, without limitation to the foregoing,

an order under Chapter 15 of the U.S. Bankruptcy Code, complement this Order and any subsequent orders of this Court and for which 913 Canada shall be the foreign representative of the Debtors (the "**Foreign Representative**"). All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Debtors and the Foreign Representative as may be deemed necessary or appropriate for that purpose.

[75]    **REQUESTS** the aid and recognition of any Court, tribunal, regulatory or administrative body in Canada, the United States of America or elsewhere, to give effect to this Order and to assist the Debtors, the Monitor and their respective agents in carrying out the terms of this Order. All Courts, tribunals, regulatory and administrative bodies are hereby requested to make such orders and to provide such assistance to the Debtors, and the Monitor as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor or the authorized representative of the Debtors in any foreign proceeding, to assist the Debtors, and the Monitor, and to act in aid of and to be complementary to this Court, in carrying out the terms of this Order.

[76]    **DECLARES** that, for the purposes of any applications authorized by paragraphs [74] and [75], Debtors' centre of main interest is located in the province of Québec, Canada.

[77]    **ORDERS** that Appendix B to the Proposed Monitor's Report (Exhibit R-20) is confidential and shall be filed under seal and kept under seal until the date on which the Monitor files with the Court the certificate attesting to the closing of a transaction pursuant to the SISP, and that Exhibit R-13 (consolidated financial statements) shall be filed under seal and kept under seal until further order from this Court after the comeback hearing scheduled on November 29, 2024;

[78]    **ORDERS** the provisional execution of this Order notwithstanding any appeal and without security.

[79]    **THE WHOLE WITHOUT COSTS.**

**The Honourable Céline Legendre, j.c.s.**

Me François D. Gagnon
Me Kevin Mailloux
Me Eugénie Lefebvre
Borden Ladner Gervais, s.e.n.c.r.l., s.r.l.
Lawyers for the Debtors

Me Alexander Bayus
Me Éliane Dupéré-Tremblay
Fasken Martineau DuMoulin, s.e.n.c.r.l., s.r.l.
Lawyers for Export Development Canada


Me Bertrand Giroux
Miller Thomson, s.e.n.c.r.l., s.r.l.
Lawyers for the Monitor

**9139249 CANADA INC.**
(the "**Corporation**")

RESOLUTIONS OF THE SOLE DIRECTOR

adopted in accordance with Section 117 of the
*Canada Business Corporations Act*

Effective as of August 8, 2024

**WHEREAS:**

A.    the Corporation is currently facing financial challenges and considering various restructuring options to address its financial situation, which could also imply bankruptcy alternatives;

B.    it is deemed to be in the best interest of the Corporation to explore and potentially proceed with any type of restructuring or bankruptcy procedures available under Canadian or United States of America law, for itself and any and all subsidiary, including but not limited to (a) filing a notice of intention to make a proposal (including any additional notices, extensions and renewals) under the *Bankruptcy and Insolvency Act* ("**BIA**"); (b) making a proposal under the BIA; (c) making a general assignment of property for the benefit of its creditors under the BIA; (d) seeking relief and restructuring under the *Companies' Creditors Arrangement Act*; and (e) any other equivalent or additional processes available at law under any U.S. legislation (collectively, "**Procedures**");

C.    the Corporation previously entered into an engagement letter dated June 10, 2024 with PricewaterhouseCoopers Inc. ("**PwC**") pursuant to which, among other things, PwC has acted as financial advisor to the Corporation.

**NOW THEREFORE BE IT RESOLVED THAT:**

1.    The Corporation is hereby authorized and directed to:

(a)    explore and proceed with any type of restructuring or bankruptcy procedure as deemed necessary and appropriate under the circumstances, for itself and any of its subsidiaries, including but not limited to any Procedures;

(b)    take such actions, steps and proceedings as may be necessary in connection with any of the Procedures, including but not limited to any actions, steps and proceedings as may be necessary or desirable to effect the Procedures;

(c)    to enter into the Engagement Letter appointing PwC as financial advisor, *nunc pro tunc* and such Engagement Letter is hereby ratified; and

(d)    to execute the Export Development Canada Term Sheet with respect to the interim financing to be provided by Export Development Canada to the Corporation to support it through the Procedures;

(e)    to engage, or cause the Corporation's wholly-owned subsidiaries, to retain the firm Thompson Hine as U.S. counsel to advise with respect to bankruptcy or restructuring procedures in the United States of America and/or all relevant legal matters under U.S.

- 2 -

laws in connection with or arising from the foregoing, including pursuant to *Chapter 11* and *Chapter 15* of the *United States Bankruptcy Code*.

2.      The sole director or any officer of the Corporation is hereby authorized and directed, for and on behalf of and in the name of the Corporation, to do and perform all such acts and things and to execute, deliver and file all such applications, documents, affidavits, declarations or other instruments in writing, whether under the seal of the Corporation or otherwise, as may be necessary or advisable in order to give full effect to the foregoing resolutions and that such execution shall constitute good and sufficient execution of any and all documents for and on behalf of the Corporation.

3.      Any and all actions taken by the sole director prior to the date of this resolution in connection with the foregoing are hereby ratified, confirmed, and approved.

4.      These resolutions may be executed in separate counterparts, and all such executed counterparts when taken together shall constitute one resolution. Delivery of these resolutions by email, facsimile, digital imaging or transmitted electronically in legible form, including without limitation in a tagged image format file (TIFF) or portable document format (PDF), shall be equally effective as delivery of a manually executed resolutions.

*[Remainder of page intentionally left blank]*

This resolution may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

_Wolf Kohlberg_
_____
**WOLF PIERRE KOHLBERG**

Zachary T. Page (SB# 293885)
Zach.Page@ThompsonHine.com
THOMPSON HINE LLP
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100 • Fax: (310) 998-9109

*Attorneys for Debtors in a Foreign Proceeding*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>9139249 Canada Inc., *et al.*[1]<br><br><br><br>Debtors in a Foreign Proceeding. | Lead Case No. [BK Number]<br><br>Joint administration requested with Case Nos:<br>[XXX]<br>[XXX]<br>[XXX]<br>[XXX]<br><br>Chapter 15<br><br>**STATEMENT PURSUANT TO FED. R. BANKR. P. 1007(A)(4)**<br><br>Hon. _____ |
| ☒ Affects all Debtors<br>☐ Affects 9139249 Canada Inc. [Can.]<br>☐ Affects Bus.com Leasing LLC<br>☐ Affects Bus.com US LLC<br>☐ Affects Bus.com US Holding Inc.<br>☐ Affects 9139249 Canada Inc. [US] | |

---

[1] The Debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number, are: 9139249 Canada Inc. (QC TIN 5773); Bus.com Leasing LLC (TIN 9394); Bus.com US LLC (TIN 4598); Bus.com US Holding Inc. (TIN 3978); 9139249 Canada Inc. (TIN 2716) (collectively, the "Debtors"). The mailing address for the Debtors is 610-4200 BOUL. Saint-Laurent, Montréal Québec H2W2R2, Canada.

9139249 Canada Inc. (the "<u>Foreign Representative</u>") in its capacity as the duly appointed foreign representative for the above-captioned Debtors, which are subject of the proceedings ("<u>Canadian Proceedings</u>") currently pending before the Superior Court (Commercial Division) for the Province of Québec, District of Montréal ("<u>Canadian Court</u>"), initiated pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "<u>CCAA</u>"), respectfully represents:

## I.    <u>Administrator in Foreign Proceedings Concerning the Debtors</u>

9139249 Canada Inc. is the Court-appointed foreign representative in the Canadian Proceedings. PricewaterhouseCoopers Inc., ("<u>PWC</u>") is the Court-appointed monitor ("<u>Monitor</u>") in the Canadian Proceedings. The Canadian Proceedings are the only foreign proceedings pending with respect to the Debtors.

**The Foreign Representatives address is:**

610-4200 BOUL. Saint-Laurent

Montréal Québec H2W2R2, Canada

**The Monitor's address is:**

1250 René-Lévesque Boulevard West, Suite 2500,

Montréal, Québec, Canada H3B 4Y1

## II.    <u>All Parties to Litigation Pending in the United States in which a Debtor is a Party at the Time of Filing of the Chapter 15 Petitions</u>

- Arminda Lincome and Christopher Bishop
  - *Armida Lincome v. Four Seasons Travel LLC, et al.*, Los Angeles Superior Court Case No. 23VECV03558.
- Nancy Cicatelli
  - *Nancy Cicatelli* vs. *Four Seasons Travel LLC, et al.*, Los Angeles Superior Court Case No. 24TRCV03889.
- Barber Lowell and Sharon Goodlow
  - *Barber, et al. v. Los Angeles World Airports, et al.*, Los Angeles Superior Court Case No. 23TRCV03240.

- Corporate Coach Charter & Tours Inc A California Corporation; Avalon Transportation LLC, a California Limited Liability Company
  - *Avalon Transportation, LLC, et al. v. 9139249 Canada, Inc.*, et al., Los Angeles Superior Court Case No. 23STCV28260.
- Johnny Lewis
  - *Johnny Lewis, An Individual v. Los Angeles International Airport, A Public Entity*, *et al.,* Los Angeles Superior Court Case No. 23TRCV03992.
- Liberty Mutual Fire Insurance Company, A Corporation
  - *Liberty Mutual Fire Insurance Company, A Corporation v. Said Bakough, et al.*, Los Angeles Superior Court Case No. 24STLC03732.
- Global Charter Services, Inc. d/b/a The Busbank
  - *Global Charter Services, I vs. 9139249 Canada Inc.*, Cook County Ill. Cir. Ct. Case No. 2023L006430.

III.   **Entities Against Whom Provisional Relief is Sought pursuant to 11 U.S.C. § 1519**

None.

IV.   **Corporate Ownership Statement Pursuant to Rules 1007(a) and 7007 of the Federal Rules of Bankruptcy Procedure**

Pursuant to Rules 1007(a) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the Foreign Representative states the following:

1. 100% of the ownership interest of Bus.com US LLC is owned by Bus.com US Holding Inc.
2. 100% of the ownership interest of Bus.com Leasing LLC is owned by Bus.com US Holding Inc.
3. 100% of the ownership interest of Bus.com US Holding Inc. is owned by 9139249 Canada Inc. (Canada).

4.  100% of the ownership interest of 9139249 Canada Inc. (US) is owned by 9139249 Canada Inc. (Canada).

5.  There is no parent corporation for 9139249 Canada Inc. (Canada), and no publicly held corporation owns 10% or more of its stock.

Dated: November 25, 2024          THOMPSON HINE LLP

By: */s/Zachary T. Page*
     Zachary T. Page
     *Attorney for Debtors in a Foreign Proceeding*

**Fill in this information to identify the case and this filing:**

Debtor Name ___9139249 Canada Inc._____

United States Bankruptcy Court for the: ___Central_____ District of ___California___
                                                                                    (State)

Case number (*If known*): _____

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* ____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☑ Other document that requires a declaration ___Rule 1007(a)(4) Statement and Corporate Ownership Statement___

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    ___11/22/2024___           ✗    _____
                    MM / DD / YYYY                          Signature of individual signing on behalf of debtor

                                                           ____Wolf Kohlberg_____
                                                           Printed name

                                                           ____President_____
                                                           Position or relationship to debtor