Zachary T. Page (SB# 293885)
Zach.Page@ThompsonHine.com
(Additional counsel omitted for space)
THOMPSON HINE LLP
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100 • Fax: (310) 998-9109

*Attorney for Debtors in a Foreign Proceeding*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>9139249 Canada Inc., *et al.*[1]<br><br> Debtors in a Foreign Proceeding. <br>☒Affects all Debtors<br>☐Affects 9139249 Canada Inc. [Can.]<br>☐Affects Bus.com Leasing LLC<br>☐Affects Bus.com US LLC<br>☐Affects Bus.com US Holding Inc.<br>☐Affects 9139249 Canada Inc. [US] | Lead Case No. [BK Number]<br><br>Joint administration requested with Case Nos:<br>[XXX]<br>[XXX]<br>[XXX]<br>[XXX]<br><br>Chapter 15<br><br>**DECLARATION OF WOLF KOHLBERG IN SUPPORT OF DEBTORS' VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN PROCEEDINGS AND (II) RECOGNITION OF FOREIGN REPRESENTATIVE PURSUANT TO CHAPTER 15 OF THE BANKRUPTCY CODE** |

---

[1] The Debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number, are: 9139249 Canada Inc. (QC TIN 5773); Bus.com Leasing LLC (TIN 9394); Bus.com US LLC (TIN 4598); Bus.com US Holding Inc. (TIN 3978); 9139249 Canada Inc. (TIN 2716) (collectively, the "Debtors"). The mailing address for the Debtors is 610-4200 BOUL. Saint-Laurent, Montréal Québec H2W2R2, Canada.

1

2          I, Wolf Kohlberg, to the best of my information and belief, declare as follows:

3          1.      I am the Chief Executive Officer of 9139249 Canada Inc., a Canadian

4  corporation ("913 Canada"), the duly appointed foreign representative ("Foreign

5  Representative") of the above captioned debtors (collectively, the "Debtors" or the

6  "Company"), in Canadian proceedings ("Canadian Proceedings") brought under the

7  Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the

8  "CCAA"), pending before the Superior Court (Commercial Division) for the Province

9  of Québec, District of Montréal ("Canadian Court"). I am authorized to provide this

10  declaration on behalf of the Foreign Representative and each of the Debtors.

11          2.      I have served as the Chief Executive Officer of 913 Canada since May

12  2024, and I hold the same position for each of the Debtors, with the title of President

13  for each of the U.S. entities. Prior to becoming Chief Executive Officer, I was the

14  Company's Senior Mobility Advisor from October 2020 to May 2024 and the

15  Company's Chief Operating Officer from December 2014 through October 2020. I

16  also sit on the Company's board of directors, and I am a Co-Founder of the Company.

17  I am responsible for overseeing the Company's U.S. and Canadian operations,

18  communicating between board members and other company executives, and making

19  important decisions that impact the Company's brand identity and financial health.

20  As such, I have personal knowledge of the matters herein, except where such facts are

21  based upon information and belief and, where so stated, I do verily believe the same

22  to be true. I do not, and do not intend to, waive any privilege by any statement herein.

23          3.      I submit this Declaration in support of (i) the chapter 15 petitions filed

24  by the Foreign Representative seeking recognition of the Canadian Proceedings by

25  the Bankruptcy Court as a foreign main proceeding, or, in the alternative, as a foreign

26  nonmain proceeding, under section 1515 of title 11 of the United State Code

27  ("Bankruptcy Code") and (ii) the Motion of the Foreign Representative for Chapter

28  15 Recognition and Final Relief ("Recognition Motion").

### <u>Overview and Events Leading to the CCAA Filing</u>

4.      The Debtors operate a charter bus and shuttle rental business providing cost-effective transportation solutions to enterprise and governmental organizations in Canada and the United States under the names "bus.com," "Bus Point Com" and "Share the Bus." Debtors' activities are comprised of three main business segments: Spot (directed to consumers), Enterprise (for commercial enterprises), and Transit (for municipal and governmental organizations) (collectively, the "<u>Business</u>"). The Business utilizes a proprietary technology that aggregates a large pool of partners to accelerate the pairing process between customers in need of bussing or chartering services and suppliers, utilizing data from various sources to quote the best prices for users. The Business also owns and, through various contractual arrangements, operates buses, including in connection with a contract (the "<u>LAWA Contract</u>") between debtor 9139249 Canada Inc., a California corporation[2] ("<u>CaliforniaCo</u>") and Los Angeles World Airports ("<u>LAWA</u>").

5.      The Company experienced strong growth since its founding but has never managed to be profitable. The accumulated losses resulted in a deficit of more than $12 million (CAD) in shareholders' equity. Following a last investment in the spring of 2024, shareholders and lenders decided not to invest further in the Company, causing significant cash flow problems in the immediate term and necessitating a formal restructuring and sale process.

6.      As of August 9, 2024, the Business's consolidated liabilities had an unaudited book value of approximately $38.25 million (CAD). These liabilities primarily consist of a $25 million (CAD) secured term loan ("<u>EDC Loan</u>") from its senior secured lender, Export Development Canada ("<u>EDC</u>" or "<u>Interim Lender</u>" or "<u>DIP Lender</u>"), a $4.429 million (CAD) letter of credit from the Royal Bank of

---

[2] Debtors 913 Canada and CaliforniaCo have identical legal names but are incorporated in different jurisdictions (Canada and California, respectively). For clarity, and despite their identical names, these entities are defined and referred to herein as '913 Canada' and 'CaliforniaCo' accordingly.

Canada ("RBC") for the benefit of the City of Los Angeles which is guaranteed by EDC, and $1.6 million (CAD) in unsecured accounts payable.

7.    As a result of certain covenant defaults arising under the EDC Loan, on August 9, 2024, 913 Canada filed in the Canadian Court a *Notice of Intention* to make a proposal to its creditors ("NOI") pursuant to subsection 50.4(1) of the Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3 ("BIA") under the laws of Canada. PricewaterhouseCoopers Inc. and/or its affiliates ("PWC") were appointed as Trustee under the BIA in the proceeding.

8.    On August 15, 2024, 913 Canada filed an *Application for the Issuance of an Order Approving a Sale and Investment Solicitation Process and an Order Extending the Delay to File a Proposal, Approving Interim Financing and Other Related Relief*, pursuant to which 913 Canada obtained approval to conduct its Sale and Investment Solicitation Process ("SISP"), phase one of which was designed to gauge the interest of potential bidders in a going-concern sale transaction. The success of phase one necessitated a transition from the BIA Proceedings to proceedings under the CCAA.

9.    On August 19, 2024, the Canadian Court entered its *Order Extending the Delay to File a Proposal Approving Interim Financing and Other Related Relief* ("First NOI Order"), providing for, among other relief, approval of:

(a)    an interim financing facility in the maximum principal amount of $850,000 (CAD) ("Initial Interim Facility") on terms and conditions set forth in the Interim Financing Term Sheet ("Initial Interim Financing Term Sheet");

(b)    a charge over all of 913 Canada's property (with the exception of the Guaranteed Investment Certificates held by RBC in an account under 913 Canada's name, in the aggregate initial amounts of USD $78,000 and CAD $190,000 (the "RBC Carveout")) in the amount of $1,020,000 ("NOI DIP Charge") in favor of EDC as interim lender;

(c)     an administration charge to guarantee payment of the professional fees and disbursements of 913 Canada, PWC, EDC, and EDC's financial advisor ("NOI Admin Charge"); and

(d)     a charge for the benefit of 913 Canada's directors and officers ("NOI D&O Charge").

10.     On August 19, 2024, the Canadian Court entered its *Order Approving a Sale and Investment Solicitation Process* ("SISP Order"), which approved the SISP proposed by 913 Canada. Pursuant to the terms of the SISP Order, PWC was engaged to conduct the SISP, in addition to its role as Trustee. Further, the SISP anticipated a bidding process and eventual transition of the Canadian Proceedings from the BIA to the CCAA and recognition of the Canadian Proceedings in the U.S. under chapter 15 of the Bankruptcy Code. Since entry of the SISP Order, 913 Canada and PWC have solicited bids pursuant to the approved SISP and have selected a winning bidder.

11.     On October 11, 2024, the Canadian Court entered its *Amended and Restated Order Extending the Delay to File a Proposal, Approving Interim Financing and Other Related Relief* ("Second NOI Order"), providing for, among other relief:

(a)     extension of the delay for 913 Canada to file a proposal with the Official Receiver to November 25, 2024;

(b)     approval of a second interim financing facility in the maximum principal amount of $700,000 (CAD) ("Supplemental Interim Facility") on terms and conditions set forth in the Supplemental Interim Financing Term Sheet (as amended, the "Supplemental Interim Financing Term Sheet"); and

(c)     approved of an increase of the NOI DIP Charge to an amount of $1,860,000 (CAD);

12.     On November 15, 2024 and in accordance with the terms of the SISP Order, EDC filed an *Application (i) for a Transition Order Under the Companies' Creditors Arrangement Act (the "CCAA") to Continue Restructuring Proceedings*

*Commenced Under the Bankruptcy and Insolvency Act, and (ii) for an Initial Order under the CCAA* ("Application"), with the Debtors' consent, which requested the transition of 913 Canada's proceeding under the BIA to a proceeding under the CCAA and the addition of Bus.com US Holding Inc. ("US Holding"), Bus.com Leasing LLC ("Leasing LLC"), Bus.com US LLC ("US LLC"), and CaliforniaCo to the Canadian Proceedings under the CCAA to implement an agreed-upon restructuring and pursue a sale process under the supervision of the Canadian Court.

13.    On November 21, 2024, the Canadian Court entered the *Initial and Transition Order* ("Initial Order"), providing for, among other relief:

(a)    a stay of proceedings in respect of the Debtors through and including November 29, 2024 ("Initial Stay Period");

(b)    continuation of (i) the First NOI Order in respect of the Initial Interim Facility, the Interim Lender and the NOI DIP Charge, and (ii) the Second NOI Order in respect of the Supplemental Interim Facility and the increase of the NOI DIP Charge with respect to 913 Canada;

(c)    authorization to enter into the Interim Financing Documents and borrow under the Interim Facility (each as defined in the Initial Order) in the maximum principal amount of (i) up to a maximum principal amount of $850,000 (CAD) on the terms and conditions as set forth in the Initial Interim Financing Term Sheet and the Interim Financing Documents and (ii) up to a maximum principal amount of $700,000 (CAD) on the terms and conditions as set forth in the Supplemental Interim Financing Term Sheet and in the Supplemental Interim Financing Documents, to finance working capital requirements of the Debtors and to implement the restructuring in the current proceedings and to pay such other amounts as are permitted by the terms of the Initial Order and the Interim Financing Documents;

(d)   the granting of the following priority charges (collectively, the "Charges") over the Property (as defined in the Initial Order), listed in order of priority:

   (i)   the Administration Charge up to a maximum amount of $200,000 (CAD);

   (ii)   the D&O Charge up to a maximum amount of $150,000 (CAD); and

   (iii)   as referenced above, the DIP Charge up to a maximum amount of $1,860,000 (CAD);

(e)   continuation of the SISP Order and the SISP; and

(f)   authorization for 913 Canada to act as the foreign representative in respect of the Canadian Proceedings for the purpose of having the Canadian Proceedings recognized and approved in a jurisdiction outside of Canada, and authorizing 913 Canada to apply for foreign recognition and approval of the Canadian Proceedings, as necessary, in any jurisdiction outside of Canada, including the U.S. pursuant to chapter 15 the Bankruptcy Code.

14.   Further, the Debtors intend to bring an application to be heard by the Canadian Court on November 29, 2024 ("Comeback Hearing") seeking an amended and restated Initial Order ("ARIO"), that, among other things:

(a)   extends the stay of proceedings and grants other customary Comeback Hearing relief under the CCAA; and

(b)   increases the maximum amounts secured by the D&O Charge in an amount to be determined at the hearing.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Background regarding the Company and the Business**

**A.**    **Corporate History and Structure**

15.    An organizational chart outlining the Company's corporate structure is below.[3]



16.    <u>913 Canada</u>: 913 Canada, the main parent of US Holding, Leasing LLC, US LLC, and CaliforniaCo (together, the "<u>U.S. Debtors</u>"), is incorporated under the laws of Quebec with a registered head office located at 610-4200 BOUL. Saint-Laurent, Montréal Québec H2W2R2 ("<u>Canadian Office</u>"). 913 Canada is the Canadian operating company for the Business and employs twenty-one (21) employees who perform operations in Canada and the U.S. 913 Canada collects revenues for the Spot and Enterprise segments of the Business, and it is responsible for incurring most operational costs. 913 Canada owns and operates the backbone of the enterprise, including the bus.com domain and all relevant software and IP that constitutes the booking system. 913 Canada also owns 100% of the ownership interests of CaliforniaCo and US Holding. The main shareholders of 913 Canada are

---

[3] Please note that the following chart uses the full legal names of the entities identified. These entities may be referred to by other defined terms as set forth herein.

Cycle Capital Fund IV, L.P. (19.0%), Jackson Square Ventures II, L.P. (15.3%), BMW i Ventures SCS SICAV-RAIF (10.8%), and EDC (10.6%).

17.    <u>Bus.com US Holding Inc.</u>: US Holding is incorporated under the laws of Delaware, with its registered office located at 145 S. Fairfax Ave, Suite 200, Los Angeles, California 90036 ("<u>U.S. Office</u>"). US Holding is a holding company without any operations or employees. US Holding owns 100% of the ownership interests of Leasing LLC and US LLC. US Holding is 100% owned by 913 Canada.

18.    <u>Bus.com Leasing LLC</u>: Leasing LLC is a limited liability company formed under the laws of Delaware, with its registered office located at the U.S. Office. Leasing LLC owns the main tangible asset of the Company, a fleet of twenty-six (26) buses (the "<u>Buses</u>"), which have a book value of $16,000,000 (CAD). Leasing LLC rents the Buses to US LLC. Leasing LLC is 100% owned by US Holding.

19.    <u>Bus.com US LLC</u>: US LLC f/k/a ShareTheBus is a limited liability company formed under the laws of Delaware, with its registered office located at the U.S. Office. US LLC holds contracts for all seven (7) U.S.-based employees and serves as a cost center for expenses for U.S. activities including the rent of the 26 buses owned by Leasing LLC. US LLC is 100% owned by US Holding.

20.    <u>CaliforniaCo</u>: CaliforniaCo is incorporated under the laws of California, with its registered office located at the U.S. Office. CaliforniaCo holds the LAWA Contract and receives all associated payments. CaliforniaCo also has a contract agent with US LLC, allowing the operation of the Buses for the execution of the LAWA Contract. CaliforniaCo has no employees, and its primary assets consist of the LAWA Contract and various operator contracts. CaliforniaCo is 100% owned by 913 Canada.

**B. The Business**

21.    913 Canada (also operating as "Bus Point Com", "Bus.com" and "Share the Bus") is a Canadian company that operates a charter bus and shuttle rental business catering to private businesses and public transportation companies in Canada and the United States.

22.     The Debtors' activities are comprised of three main business segments: Spot (directed to consumers), Enterprise (for commercial enterprises) and Transit (for paramunicipal and governmental organizations).

23.     The Debtors developed a technology that aggregates a large pool of partners to accelerate the pairing process between customers and suppliers. The algorithm developed by the Debtors gathers data from various sources to quote the best prices for users.

24.     Before the institution of the NOI proceeding the Debtors employed thirty-two (32) full-time employees in Montréal and eight (8) full-time employees in the United States. Certain employees were laid off in July 2024, such that the Debtors now employ twenty-nine (29) employees in Montreal (eight (8) of which are on temporary lay-off), and seven (7) employees in the United States.

## **Financial Position**

25.     The Company prepares financial statements[4] that report the financial position of the Debtors on a consolidated basis. The Company's fiscal year end is December 31. Both the audited consolidated financial statements for the year ended December 31, 2023 and the unaudited consolidated financial statements for the month ended September 30, 2024 for the Debtors reflect that the liabilities of the Debtors exceed their assets.

26.     As of September 30, 2024, the Debtors' consolidated assets had an unaudited book value of approximately $23,317,000 (CAD), consisting of the following short term assets: $1,423,000 (CAD) in cash, $3,980,000 (CAD) in accounts receivable, $427,000 (CAD) in prepaid deposits, and $326,000 (CAD) in other assets, plus $16,191,00 (CAD) in net tangibles and $970,000 (CAD) in net intangibles.

---

[4] Copies of the financial statements referenced herein were submitted in the Canadian Proceedings and are available to the Court upon request.

27.     As of September 30, 2024, the Debtors' consolidated liabilities had an unaudited book value of approximately $37,743,000 (CAD).

28.     In the ordinary course of business, certain of the Debtors engage in intercompany transactions. These intercompany transactions include reimbursement by the U.S. Debtors for shared services paid for by 913 Canada in connection with the Company's external audit services, third party advertising management software, and certain insurance. In addition, Leasing LLC leases the Buses to US LLC.

**A. Export Development Canada**

29.     As more fully outlined below, EDC is the Debtors' largest and highest ranking secured creditor on the vast majority of the Debtors' assets. As of November 1, 2024, EDC is owed the following approximate amounts upon which costs and interest continue to accrue:

(a)     Term loan: $25,478,502.00 (CAD)

(b)     Performance bond: $4,491,822.00 (USD)

(c)     Interim financing: $1,118,870.00 (CAD)

30.     On or about March 30, 2023, EDC, as lender, and Leasing LLC, as borrower, entered into a Loan Agreement, together with 913 Canada, US LLC and US Holding in their capacity as guarantors of the obligations of Leasing LLC towards EDC, as amended and renewed from time to time, including notably by an Amending Agreement dated October 30, 2023, and by a Second Amending Agreement dated March 12, 2024 (collectively, the "EDC Loan Agreement").

31.     Pursuant to the EDC Loan Agreement, EDC agreed to provide a term loan of a maximum aggregate amount of $25,000,000 (CAD), *i.e.*, the EDC Loan, to be disbursed in two separate tranches:

(a)     A first tranche in an amount up to $20,300,000 (CAD) to assist with the financing needs of the Debtors directly associated with export contract(s) and the working capital needs of the Debtors; and

(b)    A second tranche in an amount up to $4,700,000 (CAD) in repayment of existing indebtedness of the Debtors.

32.    The Debtors' obligations pursuant to the EDC Loan are secured by, notably:

(a)    Unconditional and irrevocable guarantees of Leasing LLC's obligations granted by 913 Canada, US LLC, US Holding and CaliforniaCo;

(b)    A first ranking security interest over all of Leasing LLC, US LLC and US Holding's present and future personal and movable property, including the motor vehicles purchased by Leasing LLC, which were perfected by way of registration of the serial number of each motor vehicle in accordance with the laws of the United States; and

(c)    a movable hypothec granted by 913 Canada in favor of EDC in an amount of $30,000,000 (CAD) (including an additional hypothec of $5,000,000 (CAD)), pursuant to a Movable Hypothec signed on March 30, 2023, and registered at the Register of Personal and Movable Real Rights ("RPMRR") that same day under no. 23-0367340-0001, which charges the universality of 913 Canada's movable assets ("EDC Hypothec no. 1").

33.    Furthermore, on or about February 15, 2024, 913 Canada entered into a Convertible Note Purchase Agreement with a number of purchasers of convertible notes and warrants from 913 Canada (listed therein), as amended and renewed from time to time, including notably by a Convention modifiée et reformulée d'achat de billets convertibles dated March 28, 2024 (collectively, the "CNPA").

34.    In an effort to raise working capital ("Equity Raise"), 913 Canada had authorized the sale and issuance of up to an aggregate of $7,000,000 (CAD) of secured convertible notes, the issuance of underlying shares, and the issuance of up to 1,206,840 warrants to acquire common shares of 913 Canada.

35.     Pursuant to the CNPA, EDC agreed to subscribe to a secured convertible note in a minimum amount of $1,500,000 (CAD) ("<u>Additional EDC Advances</u>").

36.     The obligations of 913 Canada under the CNPA and in relation to the Additional EDC Advances are secured by a movable hypothec granted by 913 Canada in favor of EDC in an amount of $1,800,000 (CAD), pursuant to a Movable Hypothec signed on March 28, 2024, and registered at the RPMRR that same day under no. 24-0360102-0005, which charges the universality of the 913 Canada's movable assets ("<u>EDC Hypothec no. 2</u>", and collectively with EDC Hypothec no. 1, the "<u>EDC Security</u>").

37.     By letter dated July 11, 2024, EDC informed the Debtors of breaches in the Cash Runway Ratio under the EDC Loan Agreement for the quarter ended June 30, 2024.

38.     By letter dated July 19, 2024 ("<u>EDC Demand Letter</u>"), EDC advised the Debtors that Leasing LLC, as borrower, had incurred additional defaults under the EDC Loan Agreement, and that EDC was demanding that the indebtedness of Leasing LLC pursuant to the EDC Loan, which, as of July 12, 2024, was in the amount of $24,631,375.06 (CAD) plus fees and costs, be repaid by July 29, 2024.

39.     The Demand Letter also contained EDC's Notice of Intention to Enforce Security pursuant to section 244(1) of the BIA ("<u>EDC NITES</u>").

40.     On or about July 23, 2024, the Debtors were served with a Prior Notice of the Exercise of a Hypothecary Right ("<u>EDC Prior Notice</u>") by EDC, with respect to EDC Hypothec no. 1.

**B. Royal Bank of Canada**

41.     RBC granted credit facilities to the 913 Canada pursuant to letter agreement dated June 14, 2023, as amended pursuant to a letter of amendment dated July 27, 2023.

42.     Pursuant to the LAWA Contract, the performance of all the terms, provisions and covenants of said contract is to be secured, notably, by an irrevocable

1  standby letter of credit, which shall automatically be extended for additional periods
2  of one year.

3      43.    On July 17, 2023, RBC issued an irrevocable standby letter of credit
4  ("RBC Letter of Credit"), to the City of Los Angeles as beneficiary, in the amount of
5  $4,491,822 (USD), as appears from a copy of the Irrevocable Standby Letter of Credit
6  No. 10014128.

7      44.    The RBC Letter of Credit is guaranteed by EDC up to a maximum
8  aggregate liability of $4,500,000 (USD), as appears from the Account Performance
9  Security Guarantee (Account PSG) Certificate of Cover issued by EDC on June 12,
10  2023 ("EDC Performance Bond") and a Confirmation de Demande de Couverture
11  dated March 22, 2024.

12      45.    In order to secure its obligations towards RBC, 913 Canada granted to
13  RBC the following movable hypothecs (collectively, the "RBC Security"):

14      (a)    a movable hypothec in an amount of $11,500 (CAD), pursuant to a
15             Deed of Hypothec dated May 11, 2017, and registered at the RPMRR
16             on November 6, 2017, under no. 17-1177454-0001, which charges
17             the guaranteed investment certificate issued by RBC as no.
18             720125900;

19      (b)    a movable hypothec in an amount of $28,750 (CAD), pursuant to a
20             Deed of Hypothec dated May 11, 2017, and registered at the RPMRR
21             on November 6, 2017, under no. 17-1176637-0001, which charges
22             the guaranteed investment certificate issued by RBC as no.
23             720125900;

24      (c)    a movable hypothec in an amount of $64,285 (CAD), pursuant to a
25             Deed of Hypothec dated October 23, 2017, and registered at the
26             RPMRR on October 31, 2017, under no. 17-1155338-0001, which
27             charges the guaranteed investment certificate issued by RBC as no.
28             00720125900; and

(d)     a movable hypothec in an amount of $207,000 (CAD), pursuant to a Deed of Hypothec dated July 27, 2023, and registered at the RPMRR on July 28, 2023, under no. 23 0890734-0045, which charges the universality of account receivables, amounts and bank deposits to the credit of the Debtor situated in account number 00720125900 held with RBC.

46.     On or about July 25, 2024, 913 Canada also received a Notice of Intention to Enforce Security pursuant to s. 244(1) of the BIA from RBC ("RBC NITES").

47.     Pursuant to the RBC NITES, the amounts of indebtedness secured by the RBC Security were, as at July 25, 2024, $199,540.31 (CAD) and $4,561,984.52 (USD) (this latter amount being guaranteed by the EDC Performance Bond).

**C. Other Secured Creditors**

48.     As part of the Equity Raise, the following entities also subscribed to secured convertible notes ("Secured Notes"): BMW I Ventures SCS SICAV-RAIF, Cycle Capital International Fund IV, L.P., Cycle Capital Fund IV, L.P., Cycle Capital Fund IV-A, L.P., Investissement Québec, Jackson Square Associates II, L.P., Jackson Square Ventures II, L.P. (together, the "Other Secured Creditors").

49.     The obligations of the Debtor under the CNPA and in relation to the Secured Notes are secured by movable hypothecs granted by 913 Canada in favor of the Other Secured Creditors.

50.     The Debtors performed lien searches ("Canadian Lien Searches") at the Register of Personal Moveable and Real Rights (the "RPMRR") under the Civil Code of Quebec and Section 427 Bank Act (Canada) against 913 Canada, the only Debtor organized under Canadian law. The Canadian Lien Searches disclosed (i) the RPMRR registrations filed in favor of EDC and RBC related to the debt discussed above and (ii) the RPMRR registrations filed in favor of certain of 913 Canada's shareholders, namely Jackson Square Ventures II, L.P., Jackson Square Associates II, L.P.,

Investissement Quebec, EDC, Cycle Capital Fund IV-A, L.P., Cycle Capital Fund IV, L.P., Cycle Capital International Fund IV, L.P., BMW i Ventures SCS SICAV-RAIF, and RBC.

51.     The Debtors performed lien searches ("US Lien Searches") under the Uniform Commercial Code ("UCC") against each of the U.S. The US Lien Searches disclosed (i) several UCC registrations against Leasing LLC in favor of EDC and (ii) two (2) UCC registrations against US LLC in favor of Cycle Capital Fund IV, L.P.

**D. Unsecured Creditors**

52.     As of the date of the NOI, 913 Canada had outstanding liabilities in the following amounts:

(a)     $368,805.81 (CAD); and

(b)     $1,311,349.42 (USD).

53.     The Company purchases goods and services in the normal course of business to facilitate the operation of the Buses and delivery of services and for administration of the Company. The Company is current with substantially all of its trade creditors such that the only amounts owed to trade creditors are within the period in which the Company usually pays the applicable trade creditor in the ordinary course. As of September 30, 2024, amounts owed to unsecured and trade creditors totaled approximately $65,000 (CAD).

54.     Since the date of the NOI, post-filing trade payables have been kept current in all material respects. The Company intends to pay its trade creditors in the ordinary course of business during the Canadian Proceedings.

**G. Real Property**

55.     The Company holds no real property assets and is not a party to any lease agreements.

**<u>The CCAA Proceedings</u>**

56.     On or about November 19, 2024, the Debtors brought the Canadian Proceedings with the Canadian Court pursuant an application under the CCAA with

the goal of evaluating a potential restructuring or conducting a court-supervised sales process. On November 21, 2024, the Canadian Court entered the Initial Order, which includes certain "Stay Period" provisions. More specifically, the Initial Order provides as follows:

> ORDERS that, until and including November 29, 2024 or such later date as the Court may order (the "Stay Period"), no proceeding or enforcement process in any court or tribunal (each, a "Proceeding"), including but not limited to seizures, executions, notices of execution, judicial or extrajudicial right of resolution or resiliation, right of set-off or compensation between mutual claims arising prior to the Effective Time or mutual claims arising respectively prior to and after the Effective Time, writs of seizure or execution, any and all actions, applications, arbitration proceedings and other lawsuits existing at the time of this Order in which any of the Debtors is a defendant, party or respondent (either individually or with other Persons (as defined below)) shall be commenced or continued against or in respect of any of the Debtors, or affecting any of the Debtors' business operations and activities (the "Business") or any of the Property (as defined herein below), including as provided in paragraph [23] herein except with leave of this Court. All Proceedings currently underway against or in respect of the Debtors or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to Section 11.1 of the CCAA.
>
> ORDERS that the rights of His Majesty in right of Canada and His Majesty in right of a Province are suspended in accordance with the terms and conditions of Section 11.09 of the CCAA.
>
> ORDERS that the claims of EDC pursuant to the credit agreement entered into between EDC, as lender, and the Debtors, as borrowers and

guarantors, dated March 30, 2023, shall not be compromised or arranged pursuant to the Plan or these proceedings, and EDC shall be treated as unaffected creditor in any Plan.

ORDERS that during the Stay Period and except as permitted under Subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Debtors nor against any person deemed to be a director or an officer of any of the Debtors under Subsection 11.03(3) of the CCAA (each, a "Director", and collectively the "Directors") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Debtors where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation.

Initial Order, ¶¶ 19-22.

57.     Further, the Initial Order expressly authorizes each of the Debtors to apply for foreign recognition and approval of the Canadian Proceedings in the United States pursuant to chapter 15 of the Bankruptcy Code. *See* Initial Order ¶ 74.

58.     With the Initial Order having been issued on November 21, 2024, the Debtors are now in the process of seeking entry by the Canadian Court of the ARIO and expect to obtain such order on or around November 29, 2024.

59.     Although each Debtor's respective management and Board of Directors remains in place, each Debtor's assets and affairs are subject to the supervision of the Canadian Court during the pendency of the Canadian Proceedings.

60.     I understand, based upon the *Declaration of François Gagnon as Canadian Counsel to the Debtors in Support of the Debtors' Chapter 15 Petitions and Requests for Certain Related Relief Pursuant to Chapter 15 of the Bankruptcy Code* ("Gagnon Declaration"), filed contemporaneously herewith, that proceedings under the CCAA are similar in many respects to proceedings under chapter 11 of the

Bankruptcy Code and thus recognition of the Canadian Proceedings will not undermine the rights that United States creditors typically enjoy in a chapter 11 proceeding. *See* Gagnon Decl., ¶¶ 16-33.

61.    The Debtors have obtained certain relief from the Canadian Court as part of the Initial Order, including, but not limited to:[5]

    (a)    Stay of proceedings during the Initial Stay Period.

    (b)    Appointment of PWC as the Monitor.

    (c)    Administration Charge in favor of the Monitor, counsel to the Monitor, counsel to the Debtors, and counsel to EDC and its financial advisor to secure payment of their reasonable fees and disbursements incurred both prior to and after commencement of the Canadian Proceedings.

    (d)    D&O Charge on the Property in favor of the directors and officers of the Debtors (collectively, the "<u>Directors and Officers</u>") in the initial amount of $150,000 (CAD) to secure any obligations and liabilities they may incur and which have accrued by reason of or in relation to their respective capacities as directors or officers of the Debtors from and after commencement of the Canadian Proceedings under the BIA, except where such obligations or liabilities were incurred as a result of such directors' or officers' gross negligence, willful misconduct or gross or intentional fault as further detailed in 11.51 of the CCAA, which applies only to the extent that the Directors and Officers do not have coverage under the Company's insurance policies in respect of the potential liability of its Directors and Officers.

    (e)    Approval of DIP Loan Agreement, DIP Loan, and DIP Lender's Charge. As indicated in the cash flow forecast to be attached to the

---

[5] Descriptions of the forms of relief sought in the Canadian Court are for reference only. To the extent there is any discrepancy, the Initial Order controls.

pre-filing report of the Monitor ("Cash Flow Forecast"), the Debtors require access to additional funding during the Canadian Proceedings to pay costs associated with the ongoing operation of the BP Business and professional fees and disbursements in connection with the Canadian Proceedings, including the SISP and the negotiation, approval and implementation of a Transaction. Debtors, as borrowers, entered into a term sheet dated January 12, 2024 ("DIP Loan Agreement") with the DIP Lender, pursuant to which the DIP Lender has agreed to fund a loan ("DIP Loan") in a maximum principal amount of $5,500,000. The DIP Loan Agreement contemplates the granting of a super-priority court-ordered charge over the Property ("DIP Lender's Charge") to secure the obligations outstanding from time to time in connection with the DIP Loan.

(f)    Authorization to pay all outstanding and future wages, salaries, expenses, benefits and vacation pay payable before, on, or after the date of the Initial Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements; and to pay the fees and disbursements of any advisor or counsel retained or employed by the Debtors in connection with these proceedings, at their standard rates and charges, with the prior written consent of the Monitor and in accordance with the Interim Financing Documents and the cash flow forecasts appended thereto.

(g)    Authorization for 913 Canada to act as the Foreign Representative.

62.    Contemporaneously herewith, the Debtors file the *Motion of the Foreign Representative for entry of an order (I) Recognizing and enforcing the SISP Order and (II) Granting Related Relief* ("SISP Motion"), seeking approval of the SISP and recognition of the SISP Order by the Bankruptcy Court (defined below). A true and correct copy of the SISP Order is attached to the SISP Motion as Exhibit A.

63.    As referenced above, the Debtors have already selected a winning bidder under the SISP and continue to negotiate the final terms of a vesting order pursuant to the SISP and SISP Order to be approved by the Canadian Court. The Debtors will submit the vesting order to the Bankruptcy Court as soon as possible, seeking to have the vesting order recognized and approved by the Bankruptcy Court.

64.    As referenced above, the Debtors intend to seek the ARIO at the Comeback Hearing. The relief contemplated by the proposed ARIO includes, but is not limited to:[6]

    (a)    an extension of the stay of proceedings; and

    (b)    an increase to the D&O Charge.

### CHAPTER 15 CASES

65.    On November 21, 2024, the Canadian Court appointed 913 Canada as the "foreign representative" for the purposes of commencing chapter 15 proceedings under the Bankruptcy Code. The Initial Order authorizes the Foreign Representative to apply for foreign recognition and approval of the Canadian Proceedings in the United States pursuant to chapter 15 of the Bankruptcy Code, seeking an order to recognize and enforce the CCAA orders in the U.S. and protect against any potential adverse action taken by U.S.-based parties (these "Chapter 15 Cases").

66.    It is my understanding that 913 Canada satisfies the definition of a "foreign representative" as that term is defined in section 101(24) of the Bankruptcy Code.

67.    The Debtors conduct business and hold property in the U.S. Additionally, CaliforniaCo is a California corporation. The Debtors, other than CaliforniaCo, have property in California via, among other things, their interest in a retainer on deposit with the California office of Thompson Hine LLP, in which

---

[6] Descriptions of the forms of relief sought in the Canadian Court are for reference only. To the extent there is any discrepancy, the ARIO controls.

1  deposit the Debtors have a continuing ownership interest. These funds are held in an

2  account at a California branch of Citibank.

3      68.    I have been informed that the Bankruptcy Code provides for recognition

4  of foreign proceeding as a "foreign main proceeding" if such foreign proceeding is a

5  "foreign proceeding" pending in a country where the debtor has "the center of its main

6  interests." *See* 11 U.S.C. § 1517(b)(1).

7      69.    I have been informed that the Bankruptcy Code provides for recognition

8  of foreign proceeding as a "foreign nonmain proceeding" if such foreign proceeding

9  is a "foreign proceeding" pending in a country where the debtor has an

10 "establishment." *See* 11 U.S.C. § 1517(b)(2).

11     70.    I have been informed that the Canadian Proceedings are "foreign

12 proceedings" as they are a collective judicial proceeding authorized and supervised

13 by the Canadian Court under the CCAA and pursuant to the Initial Order. It is my

14 understanding that for these reasons, the Canadian Proceedings qualify as "foreign

15 proceedings" as that term is defined in Section 101(23) of the Bankruptcy Code. In

16 compliance with Section 1515(b) of the Bankruptcy Code, a certified[7] copy of the

17 Initial Order, which commenced the Canadian Proceedings, is attached to each of the

18 Debtors' Chapter 15 petitions.

19     71.    In addition, I believe that each of the Debtors has its center of main

20 interests in Canada as such term is used in section 1502(4) of the Bankruptcy Code.

21 The Company is a consolidated business, with offices and primary operations in both

22 Canada and the U.S. Those operations, however, are functionally and operationally

23 integrated such that the U.S. business cannot operate independently of the Canadian

24 business and the key services provided by 913 Canada for the benefit of the entire

25 Company. The reliance of the U.S. business on Canada includes the following:

26

27 _____

28 [7] Due to the time of filing, the Debtors were not able to obtain a certified copy of the Initial Order;
however, the Debtors provide the order as entered and will fill a supplemental notice of exhibit,
attaching the certified copy of the Initial Order once they are able to obtain one.

(a) All major executive, overarching financial/strategic decisions, budgeting, and contract decisions for all Debtors are made at the parent corporation level by 913 Canada, which is headquartered in Montréal, Québec, Canada.

(b) The Debtors' primary product is an online booking and logistics system for charter bus rentals, logistics, and bus transportation. 913 Canada owns and operates the backbone of the enterprise, including the bus.com domain and all relevant software and IP that constitutes the booking system. All tech support for all technology used in the business is based at headquarters in Canada, including fare payment systems, smart applications, website maintenance and other IT tasks.

(c) There are a total of twenty-eight (28) employees across the Debtors. Of those employees, twenty-one (21) are based in Canada, and only four (4) are based in California (each of these four (4) employees are employed by US LLC). The other three (3) employees are remote employees in the U.S., not located in California. The seven (7) U.S.-based employees serve as "boots on the ground" to assist with U.S. operations.

(d) While they do assist with operational matters associated with performance of the LAWA Agreement with the City of Los Angeles, none of the U.S. employees have contract signing authority. Only management in Canada holds contract signing authority for both 913 Canada and the U.S. Debtors.

(e) Ticket sales revenue for the U.S. operations are processed by Canadian employees and remitted to LAWA weekly, after reconciling financial transactions.

(f) Canadian employees support the LAWA operations and provide material assistance for payroll processing for all U.S. employees. The

Canadian call center also handles a large portion of the "where is my bus" calls, lost and found inquiries, and LAWA customer service. The U.S. customer service call center is partly done through a U.S. based call center, which is contracted through 913 Canada. The Canadian customer service arm receives hundreds of calls per week.

(g)   The Debtors are obligors on the EDC Loan.

72.   Based on these facts, I believe that recognition of the Canadian Proceedings as foreign main proceedings is warranted.

73.   I also believe recognition of 913 Canada as the Debtors' "foreign representative" and recognition of the Canadian Proceedings as "foreign main proceedings" are consistent with the purpose of chapter 15, and will allow the Debtors to effectuate a potential restructuring or conduct a court-supervised sales process in the most efficient manner without jeopardizing creditors' rights.

74.   In the alternative, I believe that each of the U.S. Debtors has an establishment in Canada as such term is used in section 1502(2) of the Bankruptcy Code. Given the material and substantive activities conducted by the Debtors in Canada, and the Debtors' corporate offices being in Québec, Canada, the Debtors demonstrably have a local and non-transitory place of business, and hence, an establishment, in Canada.

75.   The Debtors are affiliates of each other and each of their cases were filed on the Petition Date in this court (the "Bankruptcy Court"). Accordingly, I believe that joint administration of these chapter 15 cases for procedural purposes only, as well as permitting the filing of consolidated lists of the information required by

1 Bankruptcy Rule 1007(a)(4), will be an administrative convenience for the

2 Bankruptcy Court, the court clerk's office, and interested parties.

3     76.    Accordingly, the Foreign Representative and the Debtors believe, and

4 respectfully submit, that the recognition of a foreign main proceeding commenced

5 under the CCAA constitutes the best option available in the circumstances to preserve

6 the value of the Debtors' assets, for the benefit of their creditors and stakeholders.

7

8 **Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws**

9 **of the United States of America that the foregoing is true and correct to the best**

10 **of my knowledge, information, and belief.**

11

12 Dated: November_25_, 2024

13 Montréal, QC, Canada               Wolf Kohlberg

14                           Chief Executive Officer

15                           9139249 Canada Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28