Zachary T. Page (SB# 293885)
*Zachary.Page@ThompsonHine.com*
THOMPSON HINE LLP
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100 • Fax: (310) 998-9109
*Attorneys for Debtors in a Foreign Proceeding*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>9139249 Canada Inc., *et al.*[1]<br><br>     Debtors in a Foreign Proceeding.<br><br>⊠ Affects all Debtors<br>☐ Affects 9139249 Canada Inc. [Can.]<br>☐ Affects Bus.com Leasing LLC<br>☐ Affects Bus.com US LLC<br>☐ Affects Bus.com US Holding Inc.<br>☐ Affects 9139249 Canada Inc. [US] | Lead Case No. 2:24-bk-19627<br><br>Joint administration requested with Case Nos:<br>2:24-bk-19625<br>2:24-bk-19628<br>2:24-bk-19629<br>2:24-bk-19632<br><br>Chapter 15<br><br>**VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**<br><br>[No Hearing or Notice Requirement Pursuant to Local Bankruptcy Rule 1015-1]<br><br>Hon. _____ |

---

[1] The Debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number, are: 9139249 Canada Inc. (QC TIN 5773); Bus.com Leasing LLC (TIN 9394); Bus.com US LLC (TIN 4598); Bus.com US Holding Inc. (TIN 3978); 9139249 Canada Inc. (TIN 2716) (collectively, the "Debtors"). The mailing address for the Debtors is 610-4200 BOUL. Saint-Laurent, Montréal Québec H2W2R2, Canada.

# **TABLE OF CONTENTS**

I.     Preliminary Statement ..................................................................................... 2

II.    Jurisdiction and Venue .................................................................................... 5

III.   Factual Background ......................................................................................... 5

   A.    The Debtors' Corporate Structure and Business Operations ....................... 5

   B.    The Debtor's Financial Position ................................................................ 7

IV.    The Canadian Proceedings ............................................................................. 8

V.     The Chapter 15 Filing .................................................................................. 12

VI.    Relief Requested .......................................................................................... 12

VII.   Basis for Relief Requested .......................................................................... 13

VIII.  Conclusion .................................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Statutes**

11 U.S.C. § 362 ................................................................................................... 16

11 U.S.C. § 1504 ................................................................................................. 14

11 U.S.C. § 1507 ........................................................................................... 13, 17

11 U.S.C. § 1516(c) ............................................................................................. 15

11 U.S.C. § 1517 ....................................................................................... 13, 14, 15

11 U.S.C. § 1520 ........................................................................................... 16, 17

11 U.S.C. § 1521 ................................................................................................. 17

28 U.S.C. § 157 .................................................................................................... 5

28 U.S.C. § 1334 .................................................................................................. 5

28 U.S.C. § 1409 .................................................................................................. 5

28 U.S.C. § 1410 .................................................................................................. 5

**Other Authorities**

Act, R.S.C. 1985, c. B-3 ........................................................................................ 3

California Rule of Professional Conduct 1.5 ........................................................... 5

Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 ............................... 1

United States Constitution Article III ..................................................................... 5

9139249 Canada Inc., a Canadian corporation ("913 Canada"), in its capacity as the duly appointed foreign representative ("Foreign Representative") for the above-captioned debtors (collectively, the "Debtors"), each of which are subject of proceedings ("Canadian Proceedings") currently pending before the Superior Court (Commercial Division) for the Province of Québec, District of Montréal ("Canadian Court"), under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "CCAA"), respectfully files this *Verified Petition for (i) Recognition of Foreign Proceedings and (ii) Related Relief Under Chapter 15 of the Bankruptcy Code* ("Verified Petition") in furtherance of the *Official Form 401 Petitions* [D.I. No. 1] (each a "Petition", and collectively with the Verified Petition, the "Chapter 15 Petition"), filed as of the date hereof ("Petition Date") under sections 1504 and 1515 of title 11 of the United States Code ("Bankruptcy Code"), commencing these chapter 15 cases ("Chapter 15 Cases") and seeking an order and final decree granting recognition of the Canadian Proceedings as "foreign main proceedings" as defined in section 1502(4), or, in the alternative, as "foreign nonmain proceedings" as defined in section 1502(5).

Contemporaneously herewith, and in support of the Chapter 15 Petition, the Foreign Representative files the (a) *Motion for Recognition as Foreign Main Proceedings, or, in the Alternative, Recognition as Foreign Nonmain Proceedings, under Section 1517 of the Bankruptcy Code* ("Recognition Motion"); (b) *Declaration of Wolf Kohlberg in Support of Debtors' Verified Petition for (i) Recognition of Foreign Proceedings and (ii) Recognition of Foreign Representative* ("Kohlberg Declaration"), and (c) the *Declaration of François Gagnon as Canadian Counsel to the Debtors in Support of the Debtors' Chapter 15 Petitions and Requests for Certain Related Relief Pursuant to Chapter 15 of the Bankruptcy Code* ("Gagnon Declaration").

The Foreign Representative petitions this Court as follows:

# I.  Preliminary Statement

The Foreign Representative and the Debtors (together, the "Company") operate a charter bus and shuttle rental business providing cost-effective transportation solutions to enterprise and governmental organizations in Canada and the United States under the names "bus.com," "Bus Point Com" and "Share the Bus." Kohlberg Decl., ¶ 4. Debtors' activities are comprised of three main business segments: Spot (directed to consumers), Enterprise (for commercial enterprises), and Transit (for municipal and governmental organizations) (collectively, the "Business"). *Id.* The Business utilizes a proprietary technology that aggregates a large pool of partners to accelerate the pairing process between customers in need of bussing or chartering services and suppliers, utilizing data from various sources to quote the best prices for users. *Id.* The Business also owns and, through various contractual arrangements, operates buses, including in connection with a contract (the "LAWA Contract") between debtor 9139249 Canada Inc., a California corporation ("CaliforniaCo")[2] and Los Angeles World Airports ("LAWA"). *Id.*

The Company experienced strong growth since its founding but has never managed to be profitable. *Id.*, ¶ 5. The accumulated losses resulted in a deficit of more than $12 million in shareholders' equity. *Id.* Following a last investment in the spring of 2024, shareholders and lenders decided not to invest further in the Company, causing significant cash flow problems in the immediate term and necessitating a formal restructuring and sale process. *Id.*

As a result of certain covenant defaults arising under of a $25 million (CAD) secured term loan ("EDC Loan") from its senior secured lender, Export Development

---

[2] Debtors 913 Canada and CaliforniaCo have identical names, but are incorporated in different jurisdictions (Canada and California, respectively). For clarity, and despite their identical names, these entities are defined and referred to herein as '913 Canada' and 'CaliforniaCo' accordingly.

Canada[3] ("EDC" or "Interim Lender" or "DIP Lender"), on August 9, 2024, 913 Canada filed in the Canadian Court a *Notice of Intention* to make a proposal to its creditors ("NOI") pursuant to subsection 50.4(1) of the Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3 ("BIA") under the laws of Canada. *Id.*, ¶¶ 6-7. PricewaterhouseCoopers Inc. and/or its affiliates ("PWC") were appointed as Trustee under the BIA in the proceeding. *Id.*, ¶ 7. On August 19, 2024, the Canadian Court entered its *Order Approving a Sale and Investment Solicitation Process* ("SISP Order"), which approved the Sale and Investment Solicitation Process ("SISP") proposed by 913 Canada. *Id.*, at ¶ 10. Pursuant to the terms of the SISP Order, PWC was engaged to conduct the SISP, in addition to its role as Trustee. *Id.* Further, the SISP anticipated a bidding process and eventual transition of the Canadian Proceedings from the BIA to the CCAA and recognition of the Canadian Proceedings in the U.S. under chapter 15 of the Bankruptcy Code. *Id.*

On November 15, 2024 and in accordance with the terms of the SISP Order, EDC filed an *Application (i) for a Transition Order Under the Companies' Creditors Arrangement Act (the "CCAA") to Continue Restructuring Proceedings Commenced Under the Bankruptcy and Insolvency Act, and (ii) for an Initial Order under the CCAA* ("Application"), with the Debtors' consent, which requested the transition of 913 Canada's proceeding under the BIA to a proceeding under the CCAA and the addition of 913 Canada's U.S. direct and indirect subsidiaries, Bus.com US Holding Inc. ("US Holding"), Bus.com Leasing LLC ("Leasing LLC"), Bus.com US LLC ("US LLC"), and CaliforniaCo (together, the "U.S. Debtors") to the Canadian Proceedings under the CCAA to implement an agreed-upon restructuring and pursue a sale process under the supervision of the Canadian Court. *Id.*, ¶ 12. On November

---

[3] EDC is a Canadian Crown corporation that assists Canadian companies to navigate, manage and take on risk to support growth beyond Canada's borders. *See, generally, https://www.edc.ca/en/about-us.html.*

21, 2024, the Canadian Court entered the *Initial and Transition Order* ("Initial Order"), which granted the Application, among other relief. *Id.*, ¶ 13.

Recognition of the Canadian Proceedings is imperative to the success of the Canadian Proceedings and the SISP because it is aimed at protecting the Debtors and their assets within the territorial jurisdiction of the United States from creditor and any other actions after parties learn of the Canadian Proceedings, and it will ultimately complement the moratorium imposed under CCAA within Canada. Recognition, if granted, will serve chapter 15's purpose – to allow for centralized administration of the Debtors' assets by establishing a means of coordination between the insolvency court in Canada and this Court and leveling the playing field for the Debtors, their creditors, franchisees and other interested parties in Canada and the United States. Without this Court's recognition of the Canadian Proceedings, the Debtors' operations in the United States may be jeopardized due to creditor enforcement actions, which would have a devastating effect on the Debtors and the Canadian Proceedings, resulting in diminished, if any, recoveries to the creditors of the Debtors.

The recognition and relief sought by the Foreign Representative in these Chapter 15 Cases will ensure that these Chapter 15 Cases and the Canadian Proceedings are conducted in a fair, efficient, uninterrupted, and centralized manner with the goal of providing utmost protections and maximizing the value of the Debtors' assets for the benefit of all stakeholders, including creditors, preserving jobs of the Debtors, and ensuring uninterrupted service to the Debtors' customers.

As required by section 1515(b), the Petition is accompanied by a copy of the relevant Canadian Court orders commencing the Canadian Proceedings and appointing the Foreign Representative. *See* Petition [D.I. 1]. In accordance with section 1515(c), the Foreign Representative has also filed a disclosure and verified statement, identifying all foreign proceedings with respect to each Debtor known to the Foreign Representative. *Id.* The Foreign Representative respectfully submits that the Chapter 15 Petitions satisfy the requirements of chapter 15 because the Canadian

1  Proceedings are "foreign proceedings" as defined in section 101(23), the Foreign

2  Representative is a "foreign representative" as defined in section 101(24) for each of

3  the Debtors, and all other requirements for recognition have been fulfilled.

4  Additionally, the Chapter 15 Petition satisfies the requirements in sections 1515 and

5  1517, mandating recognition. For these reasons, as more fully explained below, the

6  Foreign Representative respectfully requests that the Court grant the relief requested

7  in this Chapter 15 Petition.

8  ## II. Jurisdiction and Venue

9  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

10  1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may

11  enter a final order consistent with Article III of the United States Constitution. Venue

12  is proper in the Court pursuant to 28 U.S.C. §§ 1409 and 1410 because the Debtors'

13  principal assets in the United States are located in California. Further, Debtor

14  CaliforniaCo is incorporated under California law.  Each Debtor also has an interest

15  in a retainer on deposit with Thompson Hine LLP in which the Debtor has an

16  ownership interest. These funds are held in are held in an account at a California

17  branch of Citibank in accordance with California Rule of Professional Conduct 1.5.

18  *See* Kohlberg Decl., ¶ 67. The statutory predicates for the relief requested in this

19  Motion are sections 101(23)-(24), 105(a), 306, 1502, 1504, 1507, 1509, 1510, 1512,

20  1515, 1516, 1517, 1520, 1521, 1522, and 1524.

21  ## III.    Factual Background

22  ### A.    The Debtors' Corporate Structure and Business Operations

23  The Debtors operate a charter bus and shuttle rental business catering to private

24  businesses and public transportation companies in Canada and the United States,

25  which is comprised of three main business segments: Spot (directed to consumers),

26  Enterprise (for commercial enterprises) and Transit (for paramunicipal and

27  governmental organizations). Kohlberg Decl., ¶¶ 21-22. The Debtors developed a

28  technology that aggregates a large pool of partners to accelerate the pairing process

between customers and suppliers, and the algorithm developed by the Debtors gathers data from various sources to quote the best prices for users. *Id.*, ¶ 23.

913 Canada is the main parent of the U.S. Debtors and is incorporated under the laws of Quebec with a registered head office located at 610-4200 BOUL. Saint-Laurent, Montréal Québec H2W2R2 ("Canadian Office"). *Id.*, ¶ 16. 913 913 Canada is the Canadian operating company for the Business and employs twenty-one (21) employees who perform operations in Canada and the U.S. *Id.* 913 Canada owns and operates the backbone of the enterprise, including the bus.com domain and all relevant software and IP that constitutes the booking system. *Id.* 913 Canada also owns 100% of the ownership interests of CaliforniaCo and US Holding. *Id.* The main shareholders of 913 Canada are Cycle Capital Fund IV, L.P., Jackson Square Ventures II, L.P., BMW i Ventures SCS SICAV-RAIF, and EDC. *Id.*

US Holding is a Delaware corporation, with its registered office located at 145 S. Fairfax Ave, Suite 200, Los Angeles, California 90036 ("U.S. Office"). *Id.*, ¶ 17. US Holding is a holding company without any operations or employees. *Id.* US Holding owns 100% of the ownership interests of Leasing LLC and US LLC. *Id.*

Leasing LLC is a Delaware limited liability company, with its registered office located at the U.S. Office. *Id.*, ¶ 18. Leasing LLC owns the main tangible asset of the Company, a fleet of 26 buses (the "Buses") and rents the Buses to US LLC. *Id.*

US LLC is a Delaware limited liability company, with its registered office located at the U.S. Office. *Id.*, ¶ 19. US LLC holds contracts for all seven (7) U.S.-based employees. *Id.*

CaliforniaCo is a California corporation, with its registered office located at the U.S. Office. *Id.*, ¶ 20. CaliforniaCo holds the LAWA Contract and receives all associated payments. *Id.* CaliforniaCo also has a contract agent with US LLC, allowing the operation of the 26 buses used for the execution of the LAWA Contract. CaliforniaCo has no employees, and its primary assets consist of the LAWA Contract and various operator contracts. *Id.*

Before the institution of the NOI proceeding the Debtors employed thirty-two (32) full-time employees in Montréal and eight (8) full-time employees in the United States. *Id.*, ¶ 24. Certain employees were laid off in July 2024, such that the Debtors now employ twenty-nine (29) employees in Montreal (eight (8) of which are on temporary lay-off), and seven (7) employees in the United States. *Id.*

## B.    The Debtor's Financial Position

The Company prepares financial statements that report the financial position of the Debtors on a consolidated basis. The Company's fiscal year end is December 31. *Id.*, ¶ 25. Both the audited consolidated financial statements and the unaudited consolidated financial statements for the Debtors reflect that the liabilities of the Debtors exceed their assets. *Id.* As of September 30, 2024, the Debtors' consolidated assets had an unaudited book value of approximately $23,317,000 (CAD), consisting of the following short-term assets: $1,423,000 (CAD) in cash, $3,980,000 (CAD) in accounts receivable, $427,000 (CAD) in prepaid deposits, and $326,000 (CAD) in other assets, plus $16,191,00 (CAD) in net tangibles and $970,000 (CAD) in net intangibles. *Id.*, ¶ 26. As of September 30, 2024, the Debtors' consolidated liabilities had an unaudited book value of approximately $37,743,000 (CAD). *Id.*, ¶ 27. In the ordinary course of business, certain of the Debtors engage in intercompany transactions. These intercompany transactions include reimbursement by the U.S. Debtors for shared services paid for by 913 Canada in connection with the Company's external audit services, third party advertising management software, and certain insurance. In addition, Leasing LLC leases the Buses to US LLC. *Id.*, ¶ 28.

EDC is the Debtors' largest and highest ranking secured creditor on the vast majority of the Debtors' assets. *Id.*, ¶ 29. As of November 1, 2024, EDC is owed approximately $25,478,502.00 (CAD) pursuant to a term loan, $4,491,822.00 (USD) pursuant to performance bonds, and $1,118,870.00 (CAD) pursuant to the interim financing. *Id.* Pursuant to the EDC Loan Agreement (as defined in the Kohlberg Declaration), EDC agreed to provide a term loan of a maximum aggregate amount of

$25,000,000 (CAD), i.e., the EDC Loan, to be disbursed in two separate tranches: (a) first tranche in an amount up to $20,300,000 (CAD) to assist with the financing needs of the Debtors directly associated with export contract(s) and the working capital needs of the Debtors; and (b) a second tranche in an amount up to $4,700,000 (CAD) in repayment of existing indebtedness of the Debtors. *Id.*, ¶ 31. The debt owed to EDC is secured by various notes and other agreements. *See id.*, ¶¶ 32-40.

The Royal Bank of Canada ("RBC") granted credit facilities to 913 Canada pursuant to a letter of credit agreement in the amount of $6,296,000 (CAD) for the benefit of the City of Los Angeles and performance of the LAWA Contract ("RBC Letter of Credit"). *See id.*, ¶¶ 41-43. The RBC Letter of Credit is guaranteed by EDC up to a maximum aggregate liability of $4,500,000 (USD). *Id.*, ¶ 44. The debt owed to RBC is secured by various notes and other agreements. *See id.*, ¶¶ 45-47.

## IV.    The Canadian Proceedings

On August 9, 2024, 913 Canada filed the NOI in the Canadian Court pursuant to subsection 50.4(1) of the BIA, and PWC was appointed as Trustee under the BIA in the proceeding. Kohlberg Decl., ¶ 7.

On August 15, 2024, 913 Canada filed an *Application for the Issuance of an Order Approving a Sale and Investment Solicitation Process and an Order Extending the Delay to File a Proposal, Approving Interim Financing and Other Related Relief*, pursuant to which 913 Canada obtained approval to conduct its SISP, phase one of which was designed to gauge the interest of potential bidders in a going-concern sale transaction. *Id.*, ¶ 8. The success of phase one necessitated a transition from the BIA Proceedings to proceedings under the CCAA. *Id.*

On August 19, 2024, the Canadian Court entered its *Order Extending the Delay to File a Proposal Approving Interim Financing and Other Related Relief* ("First NOI Order"), providing for, among other relief, approval of:

(a)    an interim financing facility in the maximum principal amount of $850,000 (CAD) ("Initial Interim Facility") on terms and conditions set

forth in the Interim Financing Term Sheet ("Initial Interim Financing Term Sheet");

(b)    a charge over all of 913 Canada's property (with the exception of the Guaranteed Investment Certificates held by the Royal Bank of Canada in an account under 913 Canada's name, in the aggregate initial amounts of USD $78,000 and CAD $190,000 ("RBC Carveout")) in the amount of $1,020,000 ("NOI DIP Charge") in favor of EDC as interim lender;

(c)    an administration charge to guarantee payment of the professional fees and disbursements of 913 Canada, PWC, EDC, and EDC's financial advisor ("NOI Admin Charge"); and

(d)    a charge for the benefit of 913 Canada's directors and officers ("NOI D&O Charge").

*Id.*, ¶ 9. On August 19, 2024, the Canadian Court entered the SISP Order, which approved the SISP proposed by 913 Canada. *Id.*, ¶ 10. Pursuant to the terms of the SISP Order, PWC was engaged to conduct the SISP, in addition to its role as Trustee. *Id.* Further, the SISP anticipated a bidding process and eventual transition of the Canadian Proceedings from the BIA to the CCAA and recognition of the Canadian Proceedings in the U.S. under chapter 15 of the Bankruptcy Code. *Id.* Since entry of the SISP Order, 913 Canada and PWC have solicited bids pursuant to the approved SISP and have selected a winning bidder. *Id.* On October 11, 2024, the Canadian Court entered its *Amended and Restated Order Extending the Delay to File a Proposal, Approving Interim Financing and Other Related Relief* ("Second NOI Order"), providing for, among other relief:

(a)    extension of the delay for 913 Canada to file a proposal with the Official Receiver to November 25, 2024;

(b)    approval of a second interim financing facility in the maximum principal amount of $700,000 (CAD) ("Supplemental Interim Facility") on terms and conditions set forth in the Supplemental Interim Financing Term

1    Sheet (as amended, the "Supplemental Interim Financing Term Sheet");

2    and

3    (c)    approved of an increase of the NOI DIP Charge to an amount of

4        $1,860,000 (CAD);

5  *Id.*, ¶ 11.

6    On November 15, 2024 and in accordance with the terms of the SISP Order,

7  EDC filed the Application, with the Debtors' consent, which requested the transition

8  of 913 Canada's proceeding under the BIA to a proceeding under the CCAA and the

9  addition of US Holding, Leasing LLC, US LLC, and CaliforniaCo to the Canadian

10 Proceedings under the CCAA to implement an agreed-upon restructuring and pursue

11 a sale process under the supervision of the Canadian Court. *Id.*, ¶ 12.  On November

12 21, 2024, the Canadian Court entered the Initial Order, providing for, among other

13 relief:

14    (a)    a stay of proceedings in respect of the Debtors through and including

15        November 29, 2024 ("Initial Stay Period");

16    (b)    continuation of (i) the First NOI Order in respect of the Initial Interim

17        Facility, the Interim Lender and the NOI DIP Charge, and (ii) the Second

18        NOI Order in respect of the Supplemental Interim Facility and the

19        increase of the NOI DIP Charge with respect to 913 Canada;

20    (c)    authorization to enter into the Interim Financing Documents and borrow

21        under the Interim Facility (each as defined in the Initial Order) in the

22        maximum principal amount of (i) up to a maximum principal amount of

23        $850,000 (CAD) on the terms and conditions as set forth in the Initial

24        Interim Financing Term Sheet and the Interim Financing Documents and

25        (ii) up to a maximum principal amount of $700,000 (CAD) on the terms

26        and conditions as set forth in the Supplemental Interim Financing Term

27        Sheet and in the Supplemental Interim Financing Documents, to finance

28        working capital requirements of the Debtors and to implement the

restructuring in the current proceedings and to pay such other amounts as are permitted by the terms of the Initial Order and the Interim Financing Documents;

(d)    the granting of the following priority charges (collectively, the "Charges") over the Property (as defined in the Initial Order), listed in order of priority:

(i)    the Administration Charge up to a maximum amount of $200,000 (CAD);

(ii)    the D&O Charge up to a maximum amount of $150,000 (CAD); and

(iii)    as referenced above, the DIP Charge up to a maximum amount of $1,860,000 (CAD);

(e)    continuation of the SISP Order and the SISP; and

(f)    authorization for 913 Canada to act as the foreign representative in respect of the Canadian Proceedings for the purpose of having the Canadian Proceedings recognized and approved in a jurisdiction outside of Canada, and authorizing 913 Canada to apply for foreign recognition and approval of the Canadian Proceedings, as necessary, in any jurisdiction outside of Canada, including the U.S. pursuant to chapter 15 the Bankruptcy Code.

*Id.*, ¶ 13. Further, the Debtors intend to bring an application to be heard by the Canadian Court on November 29, 2024 at the Comeback Hearing, seeking entry of and amended and restated initial and transition order ("ARIO" or "Amended and Restated Initial Order"), that, among other things: (i) extends the stay of proceedings, (ii) increases the maximum amounts secured by the D&O Charge in an amount to be determined at the Comeback Hearing, and (iii) grants other customary Comeback Hearing relief under the CCAA. *Id.*, ¶ 14.

## V. The Chapter 15 Filing

On the date hereof ("Petition Date"), the Foreign Representative filed petitions under chapter 15 of the Bankruptcy Code for recognition of the Canadian Proceedings, thereby commencing the Debtors' Chapter 15 Cases.

Also on the Petition Date, the Foreign Representative filed the *Motion of the Foreign Representative for entry of an order (i) Recognizing and enforcing the CCAA SISP Approval Order and (ii) Granting Related Relief* ("SISP Motion"), seeking approval of the SISP and recognition of the SISP Order by this Court.

The Foreign Representative anticipates that the Canadian Court will enter the Amended and Restated Initial Order on or around November 29, 2024. A description of the relief provided in the Initial Order is set forth above. By entry of the Amended and Restated Initial Order, the relief granted in the Initial Order will be extended beyond the initial ten (10) day period.

Following conclusion of the SISP, as already approved by the Canadian Court and as further described in the SISP Motion, the Debtors anticipate the submission of a proposed vesting order for approval by the Canadian Court and this Court. At present, it is anticipated that the Debtors will seek approval of the proposed vesting order from the Canadian Court during the week of December 9, 2024.

## VI.    Relief Requested

Based on the foregoing, the Kohlberg Declaration, and the Gagnon Declaration offered in support of the Chapter 15 Petition, together with the materials attached to them, the Foreign Representative requests that this Court recognize the Canadian Proceedings as a foreign main proceeding under sections 101(23), 1502(4), and 1517 and grant related relief under sections 1520 and 1521. In the alternative, the Foreign Representative requests that this Court recognize the Canadian Proceedings as a foreign nonmain proceeding under section 1502(5).

After notice and a hearing at which this Chapter 15 Petition is considered, the Foreign Representative seeks entry of a final order, substantially in the form attached

to the Recognition Motion as Exhibit A ("<u>Proposed Recognition Order</u>"), granting relief (collectively, the "<u>Relief Requested</u>"), including, but not limited to:

(a)    Recognition of the Canadian Proceedings as a foreign main proceeding pursuant to section 1517(b)(1);

(b)    Recognition of the Foreign Representative as a "foreign representative" as defined in section 101(24) in respect of the Canadian Proceedings;

(c)    Giving full force and effect within the territorial jurisdiction of the United States to the Initial Order, the Amended and Restated Initial Order, including all extensions or amendments thereof authorized by the Canadian Court;

(d)    Granting the Debtors all the relief afforded pursuant to section 1520, including but not limited to the "automatic stay" under section 362, which shall apply with respect to the Debtors and the Property (as defined in the Initial Order) that is now or in the future located within the territorial jurisdiction of the United States;

(e)    Granting such further additional relief requested herein and as otherwise authorized by sections 1507 and 1521, as applicable, as the Court deems necessary; and

(f)    Providing such other and further relief as the Court deems just and proper.

## VII.   Basis for Relief Requested

For the reasons set forth in this Verified Petition, and as more fully set forth in the Recognition Motion, the Court should enter the Proposed Recognition Order, as the Foreign Representative meets the standards for obtaining the relief requested herein and otherwise satisfies the statutory requirements for recognition and related relief under chapter 15 of the Bankruptcy Code.

The Foreign Representative respectfully submits that the Court should recognize the Canadian Proceedings, as required under section 1517, because the

Foreign Representative applying for recognition is a "person," the Canadian Proceedings are "foreign main proceedings" within the meaning of section 1502, and the Petition meets the requirements of section 1515. Section 1517(a) authorizes the Court to enter a final order, after notice and a hearing, recognizing a foreign proceeding if (i) such proceeding is a foreign main proceeding or a foreign nonmain proceeding, (ii) the foreign representative applying for recognition is a person or body and (iii) the application for recognition was properly filed in accordance with section 1515. *See* 11 U.S.C. § 1517(a).

Section 1517(b) further provides that a proceeding shall be recognized as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests. *See* 11 U.S.C. § 1517(a). The Foreign Representative is a "person" within the meaning of section 101(41) that has been appointed by the Canadian Court, as memorialized in the Initial Order, and expressly authorized by the Canadian Court to commence these cases under chapter 15 of the Bankruptcy Code by filing the Chapter 15 Petition for recognition of the Canadian Proceedings. *See* 11 U.S.C. § 1504. The Canadian Proceedings are "foreign proceedings" within the meaning of section 101(23) because, among other reasons, they are collective judicial proceedings conducted in Canada under the law related to insolvency or debt adjustment, and the assets and affairs of the Debtors are subject to supervision by the Canadian Court for the purpose of reorganization or liquidation. Further, as required by section 1515(b), the Chapter 15 Petition is accompanied by a true copy of the decision commencing the Canadian Proceedings and appointing the Foreign Representative of the Debtors. The decision commencing the Canadian Proceedings is in English and, thus, comports with section 1515(d). In accordance with section 1515(c), the Foreign Representative has filed a statement disclosing that, to the best of its knowledge, there are no other foreign proceedings pending with respect to the Debtors. The Foreign Representative has, therefore, satisfied the conditions requiring entry of an order recognizing the Canadian Proceedings. *See* 11 U.S.C. § 1517(a).

Additionally, recognition of the Canadian Proceedings is not manifestly contrary to the public policy of the United States. Based on the foregoing, the Foreign Representative petitions the Court for entry of an order recognizing the Canadian Proceedings.

The Canadian Proceedings should be recognized as foreign main proceedings. The Debtors' center of main interests is in Quebec, Canada, because the Company has its nerve center in Canada. Specifically, the parent company of the Debtors is formed under the laws of Quebec and, prior to the commencement of CCAA, had its registered office and headquarters in Montreal, Quebec, Canada, therefore, Canada is presumed to be the center of main interests for 913 Canada. *See* 11 U.S.C. § 1516(c). Moreover, when the Canadian Court exercised jurisdiction over the Debtors, it implicitly recognized the significance of the Debtors' interests there. Further, the locus of the Debtors restructuring is now in Canada. Since Canada is the center of main interests for the Debtors, the Canadian Proceedings should be recognized as foreign main proceedings. 11 U.S.C. § 1517(b)(1).

Based on the Kohlberg Declaration and the arguments set forth in the Recognition Motion, the Debtors formed under the laws of Delaware and California also have their center of main interests in Canada. As stated above, the Company is a consolidated business, and the U.S. Debtors' operations are functionally and operationally integrated with the Company such that the U.S. business cannot operate independently of the Canadian business and the key services provided by 913 Canada.

As described further in the Kohlberg Declaration and Recognition Motion, all major executive, overarching financial/strategic decisions, budgeting, and contract decisions for all Debtors are made at the parent corporation level by 913 Canada, which is headquartered in Montreal, Quebec, Canada. Further, 913 Canada owns and operates the backbone of the enterprise, including the bus.com domain and all relevant software and IP that constitutes the booking system. All tech support for all

technology used in the Business is based at headquarters in Canada, including fare payment systems, smart applications, website maintenance and other IT tasks.

The vast majority of the Debtors' 33 employees are in Canada, with only seven U.S.-based employees serve as "boots on the ground" to assist with U.S. operations. Furthermore, only management in Canada holds contract signing authority for both 913 Canada and the U.S. Debtors. Likewise, ticket sales revenue for the U.S. operations are processed by Canadian employees and remitted to LAWA weekly, after reconciling financial transactions, and the Canadian call center for the Business also handles a large portion of customer inquiries and LAWA customer service. Finally, 913 Canada and 3 of the 4 U.S. Debtors are obligors on debt owed to Export Development Canada ("EDC"), a Canadian Crown corporation. CaliforniaCo is not an obligor on the EDC debt; however, CaliforniaCo's obligations under the LAWA Agreement are backed by a letter of credit issued by The Royal Bank of Canada, as a condition of the LAWA Agreement. For all of these reasons, and as set forth in the Recognition Motion, the Debtors' center of main interest is in Canada.

Upon recognition of the Canadian Proceedings as foreign main proceedings as requested herein, final relief is authorized by sections 1520 and 1521. In particular:

(a)     The Foreign Representative is automatically entitled to the protections of the automatic stay of section 362. *See* 11 U.S.C. §§ 362, 1520(a)(1).

(b)     Sections 363, 549 and 552 apply to a transfer of an interest of the Debtors in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of the estate. *See* 11 U.S.C. § 1520(a)(2).

(c)     The Court may also suspend the right to transfer, encumber or otherwise dispose of the Debtors' assets. *See* 11 U.S.C. § 1520(a). To the extent that this relief is not granted under section 1520 by applying section 362, the Court may grant this relief pursuant to section 1521(a)(3).

(d)  The Court may also stay the commencement or continuation of an action or proceeding against any one or more of the Debtors' and stay execution against any one or more of the Debtors' assets. *See* 11 U.S.C. § 1520(a). To the extent this relief is not granted under section 1520 by applying section 362, the Court may grant this relief pursuant to sections 1521(a)(1) and 1521(a)(2).

(e)  The Foreign Representative is entrusted either as of right under section 1520 or with the discretionary approval of the Court under section 1521, with the right to operate the Debtors' business, exercise rights and power of a trustee, and is entitled to administer and realize all or part of the Debtors' assets within the territorial jurisdiction of the United States. *See* 11 U.S.C. § 1520(a)(3), 1521(a)(5).

(f)  The Court may also grant any other requested relief under the Bankruptcy Code pursuant section 1521(a)(7), including DIP financing under section 364.

The Court also has the power to provide additional assistance to a foreign representative under the Bankruptcy Code or other laws of the United States, consistent with the principles of comity. *See* 11 U.S.C. §§ 1507, 1521. The Court's entry of the relief requested by the Chapter 15 Petition and of any additional assistance requested will not prohibit just treatment of holders of claims against the Debtors' property and will not prejudice their creditors. As such, the Foreign Representative submits that the Court has the discretion to enter the additional assistance set forth in the attached proposed form of order.

### VIII.  Conclusion

WHEREFORE, 913 Canada, in its capacity as Foreign Representative of the Debtors, respectfully petitions the Court for recognition and relief under chapter 15 of the Bankruptcy Code, the relief requested herein, and for such other relief as may be necessary and appropriate.

1  Dated: November 25, 2024          THOMPSON HINE LLP

2

3

4

5                                    By:  */s Zacahary T. Page*

6                                         Zachary T. Page

7                                         *Attorney for Debtors in a Foreign*

8                                         *Proceeding*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28